

In the

Missouri Court of Appeals

Western District

TYLICEE S. GREENE,

           **Respondent,**

v.

ALLIANCE AUTOMOTIVE, INC. D/B/A
JD BYRIDER AND AUTOBANC-2
CORPORATION D/B/A CNAC,

           **Appellants.**

**WD75863**

**OPINION FILED:**

**MARCH 11, 2014**

### Appeal from the Circuit Court of Jackson County, Missouri
### The Honorable Marco A. Roldan, Judge

**Before Division One: Victor C. Howard, P.J., Joseph M. Ellis, and Anthony Rex Gabbert, JJ.**

Alliance Automotive, Inc., d/b/a JD Byrider, and Autobanc-2 Corporation, d/b/a CNAC (hereinafter collectively referenced as "Alliance") appeal the circuit court's order denying its motion to compel arbitration and denying its motion for relief from that order. Alliance contends that the court erred in denying its motions because a valid and enforceable arbitration agreement exists between the parties. We affirm.

On June 13, 2012, Tylicee S. Greene filed a petition for damages against Alliance wherein she alleged wrongdoing by Alliance in association with a vehicle she purchased and/or financed through Alliance and which Alliance later repossessed. On August 7, 2012, Alliance filed a motion to compel arbitration. Alliance contended that Greene was bound to arbitrate the

matter because of a Retail Installment Contract and Security Agreement (Purchase Agreement) Greene signed when she purchased her vehicle. Alliance quoted the arbitration agreement language from the contract and provided a copy of the contract as an exhibit.

On October 9, 2012, Greene filed suggestions in opposition to Alliance's motion to compel arbitration. Therein, Greene set forth factual allegations and case law supporting that the arbitration agreement within the Purchase Agreement was unconscionable and part of an adhesion contract. Greene provided the court with the video that Alliance Automotive took of Greene's closing. On October 22, 2012, the court denied Alliance's motion to compel arbitration without comment. On November 1, 2012, Alliance filed a "Motion for Relief from Order or Motion to Amend the Order" and set forth factual and legal arguments as to the validity of the arbitration contract and factual and legal arguments as to why the contract was not an adhesion contract and was not unconscionable. On November 21, 2012, the court overruled Alliance's motion. Alliance appeals.

In Alliance's sole point on appeal, Alliance contends that the circuit court erred in denying its motion to compel arbitration and its motion for relief from that denial. Alliance argues that state and federal law favor arbitration and require enforcement of valid agreements to arbitrate and contends that Alliance and Greene's arbitration agreement is valid, binding, and enforceable.

The parties dispute the proper standard of review. While Alliance does not contend that the circuit court had inadequate facts before it to make a determination as to the validity and/or enforceability of the arbitration agreement, Alliance argues in its reply brief that, because there

2

was no live witness testimony, no oral argument, and no factual findings, this court is to give no deference to the trial court's judgment.[1]

Motions to compel arbitration are tried in summary proceedings. Section 435.355.2, RSMo 2000. Summary proceedings are those conducted "'[w]ithout the usual formalities [and] without a jury.'" *Nitro Distributing, Inc. v. Dunn*, 194 S.W.3d 339, 352 (Mo. banc 2006) (quoting BLACK'S LAW DICTIONARY 1476 (8th ed. 1999). "In such summary proceedings where one of the parties disputes the existence of the contract of arbitration, the parties may present evidence, including but not limited to documents, affidavits, and deposition transcripts to resolve the factual disputes." *M & I Marshall & Ilsley Bank v. Sader & Garvin*, L.L.C., 318 S.W.3d 772, 777 (Mo. App. 2010). "After one party has challenged the existence of an enforceable agreement to arbitrate, the trial court must determine that issue based upon the evidence before it." *Id. See also Nitro Distributing, Inc.*, 194 S.W.3d at 352, and *Katz v. Anheuser-Busch, Inc.*, 347 S.W.3d 533, 546 (Mo. App. 2011). In so doing, the court applies the usual rules of state contract law and canons of contract interpretation. *Nitro*, 194 S.W.3d at 345. "[O]ur review of the trial court's determination as to the existence of an agreement itself is analogous to that in a court-tried case." *Kunzie v. Jack-In-The-Box, Inc.*, 330 S.W.3d 476, 480 (Mo. App. 2010). The standard of review in court-tried civil cases requires that we defer to the court's assessment of evidence on contested issues of fact. *White v. Director of Revenue*, 321 S.W.3d 298, 308 (Mo. banc 2010).

---

[1]Alliance argued against an evidentiary hearing in its reply in response to its motion to stay, contending that Greene's allegation of procedural and substantive unconscionability created no factual dispute and the court had the necessary facts before it to act on Alliance's motion. While Alliance was denied a response to Greene's suggestions in opposition to its motion to compel arbitration, Alliance addressed Greene's factual contentions in its Motion for Relief from and Motion to Amend the Order. Alliance argues in its reply brief that the circuit court had this information before it when ruling on and considering Alliance's motion for relief.

3

When the case is submitted to the trial court on the basis of documentary evidence, and we have the same opportunity to review the evidence as did the trial court, "'the law allocates the function of fact-finder to the [trial]court.'" *State v. Williams*, 334 S.W.3d 177, 181 n. 9 (Mo. App. 2011) (quoting *MSEJ, LLC v. Transit Cas. Co.*, 280 S.W.3d 621, 623 (Mo. banc 2009)). Therefore, "[e]ven where the trial court's decision was based solely 'on the records,' we defer to the trial court as the finder of fact in determining whether there is substantial evidence to support the judgment and whether the judgment is against the weight of the evidence." *Williams*, 334 S.W.3d at 181 (internal quotation omitted). While the record might have supported a contrary result, it is not our role to reweigh the evidence. *Cf. Anderson v. City of Bessemer City*, 470 U.S. 564, 573-75, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (finding court of appeals improperly applied standard of appellate review set forth in Federal Rule of Civil Procedure 52(a) by weighing the evidence in the record *de novo*; reviewing court oversteps its bounds if it undertakes to duplicate role of lower court; if district court's factual findings, even when based on only documentary evidence, are plausible viewed in light of the entire record, the court of appeals may not reverse, even though it may have weighed the evidence differently; deference to the factual findings of the trier of fact is the rule, not the exception).

*Mapes v. Director of Revenue*, 361 S.W.3d 29, 36 (Mo. App. 2011). "Whether the trial court should have granted a motion to compel arbitration is a question of law that this [c]ourt reviews *de novo*." *Robinson v. Title Lenders.*, 364 S.W.3d 505, 510 (Mo. banc 2012).

Here, Alliance argues that the arbitration agreement between Alliance and Greene is valid and enforceable because Greene voluntarily entered into the contract. Alliance argues that Greene was advised multiple times of the arbitration provision, that Greene failed to ask any questions though given the opportunity, and that Greene had a unilateral right to reject the arbitration provision which she failed to exercise. Alliance urges that the Purchase Agreement is not a contract of adhesion. Alliance contends that the pre-closing video and transcript, the video of the closing, and the signed documents all prove that the arbitration provision was disclosed to Greene. Greene disagrees. Greene argues that the arbitration agreement is invalid per Missouri contract law because it is procedurally and substantively unconscionable and is part of an adhesion contract.

4

By denying Alliance's motion to compel arbitration, the circuit court necessarily disagreed with Alliance's contention that the Purchase Agreement contained an enforceable arbitration agreement.[2] As the court denied Alliance's motion without comment, it is the burden of this court to determine if substantial evidence and the weight of the evidence support the court's conclusion. "All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01(c). Pursuant to our Supreme Court's analysis in *Brewer v. Missouri Title Loans*, 364 S.W.3d 486, 492 (Mo. banc 2012), we analyze the issues in this appeal to determine if, under the factual record presented, Greene "established a defense to the formation of the agreement's arbitration clause." *Id.* at 492. *Brewer* instructs that we are to no longer focus on procedural and substantive unconscionability, as we have in the past, but how unconscionability impacted the formation of the contract. *Id.* at 492 n.3. Alliance, as the party seeking to compel arbitration, had the burden of proving the existence of a valid and enforceable arbitration agreement. *Whitworth v. McBride & Son Homes, Inc.*, 344 S.W.3d 730, 737 (Mo. App. 2011).

When considering whether a party is compelled to arbitrate, we first must determine if a valid arbitration agreement exists.[3] *M & I Marshall & Ilsley Bank v. Sader & Garvin, L.L.C.*, 318 S.W.3d 772, 776 (Mo. App. 2010).

---

[2]We note that at the time the circuit court denied Alliance's motion, *AT & T Mobility, LLC v. Concepcion*, --- U.S. ----, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011), *Robinson v. Title Lenders, Inc.*, 364 S.W.3d 505 (Mo. banc 2012), and *Brewer v. Missouri Title Loans*, 364 S.W.3d 486 (Mo. banc 2012) had all been decided. The trial court is presumed to know the law[.] *Lane v. Lensmeyer*, 158 S.W.3d 218, 224 (Mo. banc 2005). Moreover, "[t]he presumption is that the court, in weighing the evidence, was governed by correct rules of law." *Linders v. Linders*, 356 Mo. 852, 204 S.W.2d 229, 234 (1947).

[3]While Alliance argues that federal and state law requires enforcement of valid arbitration agreements, federal and state law also recognize that agreements to arbitrate may be invalidated by generally applicable contract defenses, such as fraud, duress, or deficient formation. *Brewer*, 364 S.W.3d at 491. We examine applicable state law defenses on a case by case basis. *Id.* at 492.

5

> It is a firmly established principle that parties can be compelled to arbitrate against their will only pursuant to an agreement whereby they have *agreed* to arbitrate claims. Though [individuals] are free to enter into an agreement to arbitrate disputes, the agreement is not valid unless it reflects the essential contract elements required under Missouri law. It follows that arbitration may not be unilaterally imposed on a party when there is not a valid and enforceable agreement to arbitrate. The elements required to form a valid contract in Missouri are offer, acceptance, and bargained for consideration.

*Frye v. Speedway Chevrolet Cadillac*, 321 S.W.3d 429, 436 (Mo. App. 2010) (internal quotations and citations omitted).

With regard to the first necessary element for a valid contract – offer – there is no dispute that Greene was offered an arbitration agreement. The arbitration agreement is found on pages four and five of Greene's Purchase Agreement. With regard to the second requisite element for a valid contract – acceptance – Alliance contends that Greene signed the arbitration agreement and, therefore, accepted it. Greene, in essence, contends that while she signed the agreement, she did not knowingly accept it.[4] She charges that she was first presented the purchase documents at closing, was never given the opportunity to read any of the documents prior to closing, and was never given a chance to thoroughly read the purchase documents. Greene contends that she was discouraged from reading the documents due to, among other things, their complexity. She claims to have never read the terms of the arbitration agreement, that it was not explained to her, and that she failed to understand matters that were explained because of the "sheer amount of information presented and the speed at which the person in the finance department was talking." She claims that she did not know what the word "arbitration" meant when she signed the purchase documents and that she was not informed that she could reject arbitration.

---

[4]Greene makes these arguments when asserting unconscionable formation.

6

Alliance Automotive videotaped Greene's closing. The court had the benefit of viewing this video which depicts Alliance Automotive presenting and Greene signing the documents that are now in contest. In the video, Greene can be observed signing a paper when the video begins. With the camera running, the closing agent advises Greene that all loan closings are videotaped to protect both parties, and Greene is then asked to sign an authorization for the videotaping. While holding a stack of papers that include the Purchase Agreement, the closing agent individually presents each paper within the stack to Greene. With each presentation, the closing agent identifies the document and its contents, asks for Greene's signature, and then sets aside each signed paper. At approximately four minutes into the video, the closing agent advises Greene that she will ultimately receive a copy of all the signed papers. At approximately fifteen minutes into the video, after Green had already signed numerous papers, the closing agent asks, "Did you have any questions about the arbitration agreement?" Greene responds, "Um, no." The closing agent then presents the part of the Purchase Agreement containing the arbitration provision and states: "Ok. Here it is in legal terms. If you can't sleep one night I suggest this for reading. It will help you get there. Just need your initials there. I don't think I've ever got through the whole thing without passing out." Greene signed the paper and it was set aside by the closing agent. The aforementioned discussion and signing of the arbitration agreement took approximately thirteen seconds.

We find the closing video evidence from which the circuit court could have concluded that true acceptance with regard to the arbitration agreement was questionable. While Alliance contends that Greene should be bound by her signature and is presumed to have read and understood the agreement she signed, Alliance Automotive's own closing video portrays a matter of fact, cursory closing process where the closing agent trivialized the arbitration clause.

7

The video shows Green being presented the arbitration agreement with no discussion as to its meaning or ramifications. Although Alliance Automotive's pre-closing video encouraged Greene to read the provisions of the arbitration transaction carefully, that instruction was not amplified in any way and was intermingled with topics ranging from odometer statements to checking tire tread. Significantly, Greene did not have the arbitration agreement in her possession at the time she watched the pre-closing video so as to even follow those instructions at the time they were given. Alliance does not dispute Greene's contention that she was given no opportunity to read the arbitration agreement prior to the closing. Hence, the closing video could support a conclusion that the rapidity of Alliance Automotive's closing process, and the overall manner in which the closing was conducted, foreclosed Greene's opportunity to fully read and comprehend the arbitration clause such that the agreement to arbitrate was not accepted by Greene.

However, as Greene did sign the arbitration agreement, we are reluctant to conclude that there was no contractual "acceptance" as we generally deem parties bound by the contracts they sign and will enforce those contracts unless they were induced by fraud, duress, or undue influence. *Nitro Distributing, Inc.*, 194 S.W.3d at 349. Greene's signature signifies acceptance.[5]

---

[5]We note that the "Right to Reject Arbitration" provision of the contract calls into question exactly what Greene "accepted" at the time she gave her signature. Although Alliance argues that Greene had a unilateral right to reject and understood that with her signature, based on the plain language of the provision, she was given no option to specifically reject arbitration when she signed the Purchase Agreement. The provision provides that:

> If you do not want this arbitration agreement to apply, you may reject it by mailing a written notice to us c/o Byrider Franchising, ..... A rejection notice is only effective if it is signed by each Buyer, and the envelope that the rejection notice is sent in is postmarked no more than 10 calendar days after the date of the Contract. If you reject this arbitration agreement, it will not affect any other provisions of the Contract or your obligations under the Contract. If you do not properly reject this arbitration agreement, it will be effective as of the date of the Contract.

Thus, Greene could only specifically and separately reject arbitration if she properly sent separate notice within 10 days of signing the Purchase Agreement. Greene's signature, therefore, may signify that she agreed that

Proof of fraud, duress, or undue influence, however, could negate that acceptance. Here, we need not decide whether Greene's signature was in some way negated as we find that the arbitration agreement lacks the third necessary element for a valid contract -- mutual consideration.[6]

With regard to consideration, "if a contract contains mutual promises, such that a legal duty or liability is imposed on each party as a promisor to the other party as a promisee, the contract is a bilateral contract supported by sufficient consideration." *Frye*, 321 S.W.3d at 445. Here, the arbitration agreement contains a self-help provision which states:

> Self-Help: Notwithstanding this arbitration agreement, the Parties retain the right to exercise self-help remedies and to seek provisional remedies from a court, pending final determination of the Dispute by the arbitrator. No Party waives the right to elect arbitration of a Dispute by exercising self-help remedies, filing suit, or seeking or obtaining provisional remedies from a court.

The alleged facts in this case are that the Purchase Agreement was entered into on August 23, 2011, that Greene made all previous scheduled payments but failed to make her scheduled October 21, 2011, payment, and that on October 22, 2011, Greene received a demand letter for that payment and her car was repossessed on that same date. While we take no position on the merits of these allegations, in Alliance's Motion to Compel Arbitration, Alliance states that "Plaintiff defaulted on her obligation under the Contract and, pursuant to the terms of the Contract, Defendant repossessed the vehicle." Alliance admits in its answer to Greene's petition that "[o]n or about November 8, 2011, Defendant CNAC sent the Missouri Department of Revenue an Application/Affidavit for Missouri Repossession Title." On June 13, 2012, nearly

---

she understood that she could later reject arbitration and that it would be imposed upon her if she failed to properly reject, but may not signify acceptance.

[6]"Acceptance of a unilateral demand is acquiescence . . . but in the absence of consideration, it does not bind the acceptor contractually." *Frye*, 321 S.W.3d at 438.

9

eight months after the repossession, Greene filed suit against Alliance alleging conversion, violation of the Merchandising Practice Act, violations of Chapter 408, violations of UCC, claim of holder liability, and civil conspiracy.

Alliance is matter of fact that Greene defaulted on the contract and, pursuant to the contract, Alliance exercised self-help and repossessed Greene's vehicle. Nowhere in Alliance's Motion to Compel Arbitration or in Alliance's answer to Greene's petition does Alliance ever suggest that the self-help repossession was affirmed through arbitration or was pending final determination by an arbitrator. Yet, the express language of the self-help provision of the arbitration agreement indicates that self-help is only allowable "*pending final determination of the Dispute by the arbitrator*." If this is accurate, then Alliance may have waived its right to force Greene to arbitrate her claims by employing its self-help remedy inconsistent with the procedure set forth in the arbitration clause. A party waives its right to arbitrate if it has knowledge of the existing right, acts inconsistently with that right, and prejudices the party opposing arbitration. *Frye*, 321 S.W.3d at 438. However, the arbitration agreement also states that "no party waives the right to elect arbitration . . . by exercising self-help remedies." While it could be argued that Alliance waived its right to arbitrate, not by exercising self-help but by failing to exercise self-help in conjunction with arbitration as required in the arbitration agreement, we need not decide whether the anti-waiver clause precludes waiver here because, at the very least, it proves that the arbitration agreement lacks mutuality.

The arbitration agreement purports to cover "any dispute" between the parties ... and apply to all matters arising out of or relating to the Contract or is "in any way connected with the purchase and sale or financing of the Vehicle, or any resulting transaction or relationship." The agreement defines "dispute" as including "any action, dispute, claim or controversy of any kind

10

arising out of .... the Contract, the sale of the Vehicle, financing, contracts, origination . . . or any other aspect whatsoever of the past, present, or future relationship or conduct of the Parties." Thus, if Greene defaulted on the contract as Alliance alleges, this would have been a matter arising out of the contract and a matter that Alliance should have arbitrated under the agreement. Yet, the agreement simultaneously allows for self-help and states that self-help will not waive a party's right to elect arbitration. Under the "Default" portion of the Purchase Agreement it provides that "[i]f you default, you agree to pay court costs, attorneys' fees, and reasonable expenses incurred in realizing on the Property securing this Contract." Under the "Remedies" portion of the Purchase Agreement it states that "[i]f you are in default on this Contract, we will have all of the remedies provided by law and this Contract," including repossession by "legal process or self-help."

Our Supreme Court in *Brewer v. Missouri Title Loans*, 364 S.W.3d 486, 493 (Mo. banc 2012), found an arbitration agreement between Beverly Brewer and Missouri Title loans unenforceable. The agreement was part of a transaction whereby Brewer borrowed $2,215 from Missouri Title Loans and secured the loan with the title to Brewer's automobile. *Id.* at 487. The *Brewer* court found especially onerous that Brewer was required to obtain her only meaningful remedy to a dispute via arbitration, while the lender retained its primary remedies – judicial or self-help repossession. *Id.* at 494-95. "A contract that purports to exchange mutual promises will be construed to lack legal consideration if one party retains the unilateral right to modify or alter the contract as to permit the party to unilaterally divest itself of an obligation to perform the promise initially made." *Frye*, 321 S.W.3d at 442. Here, if the anti-waiver provision means that Alliance can exercise its primary remedy of self-help repossession without waiving arbitration of other disputes, then the agreement itself allows Alliance to unilaterally divest itself of the

11

promise to arbitrate. Alliance apparently interprets the agreement in this manner as it solved its own dispute with Greene by repossessing her vehicle, but now relies on the express language of the arbitration agreement to compel Greene to arbitrate her claims. There is no mutual promise to arbitrate in an agreement such as this and, therefore, Alliance has failed to prove the existence of a valid, enforceable arbitration agreement.[7]

We, therefore, conclude that the arbitration agreement between Alliance and Greene lacks mutuality of consideration and is, therefore, invalid, non-binding, and unenforceable. The circuit court did not err in denying Alliance's motion to compel arbitration. We affirm the circuit court's order.

_____
Anthony Rex Gabbert, Judge

All concur.

---

[7]Additionally, with regard to Autobanc 2, the Purchase Agreement indicates that although negotiated by Alliance Automotive, it was immediately assigned to Autobanc 2 under the terms of a separate agreement.