

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | |
|---|---|
| MOTORMAX FINANCIAL SERVICES CORPORATION, | ) ) ) No. ED102257 |
| Plaintiff/Appellant, | ) ) |
| vs. | ) Appeal from the Circuit Court of the ) City of St. Louis ) |
| ARNOLD KNIGHT, | ) Honorable Christopher E. McGraugh ) |
| Defendant/Respondent. | ) Filed: August 18, 2015 |

### Introduction

Motormax Financial Services Corporation (Motormax) appeals the denial of its motion to compel arbitration of a counterclaim asserted against it by Arnold Knight after Motormax repossessed his vehicle and filed a collection action against him. In two points, Motormax claims the trial court erred in denying its motion based on its finding that the arbitration agreement was unenforceable and that Motormax waived its right to arbitration. We affirm.

### Factual Background

On June 28, 2012, Arnold Knight entered into a contract with Motormax to finance a title loan that was secured by his Ford F-150 truck. The annual percentage rate on the loan was 93.5%. During the loan closing, which was videotaped and conducted by a Motormax representative, Mr. Knight was asked to sign an arbitration agreement (Agreement). The

Agreement provided that any claims or disputes between the parties "shall be settled by binding arbitration." The Agreement also gave Motormax the right to repossess Mr. Knight's vehicle if he failed to comply with the provisions of the contract and pursue its claims in court without waiving arbitration. In April 2013, Motormax repossessed Mr. Knight's vehicle after he allegedly defaulted on the contract. In September 2013, Motormax filed a collection action in the trial court against Mr. Knight seeking $1,820.85 (the alleged balance due on the contract), plus interest, costs, and attorney's fees. In February 2014, Mr. Knight filed an answer and a class action counterclaim, alleging that Motormax had violated the notice requirements of §§ 400.9-611- 400.9-614 RSMo,[1] in connection with the repossession of his vehicle. The counterclaim also alleged that Motormax had violated the Merchandising Practices Act, §§ 407.010 *et seq.*

In April 2014, Motormax filed a motion to compel arbitration of the counterclaim, which the trial court denied on October 10, 2014. Less than a month later, Motormax dismissed its collection action against Mr. Knight without prejudice. Motormax now appeals the trial court's denial of its motion to compel arbitration.

**Motion to Dismiss**

Before addressing the merits of the appeal, we consider Mr. Knight's contention that we lack jurisdiction to consider this appeal because it was not timely filed. In his motion to dismiss the appeal, taken with the case, Mr. Knight asserts that the appeal is untimely because Motormax did not file its notice of appeal within ten days after the trial court entered its "Order and Judgment" denying the motion to compel arbitration. Specifically, he claims the judgment was final and appealable on October 10, 2014, the day it was entered, pursuant to § 435.440.1.

---

[1] All statutory references are to RSMo (Supp. 2012), unless otherwise indicated.

2

Motormax counters that the ten-day time period for filing its appeal did not begin to run until the trial court's judgment became final thirty days later on November 9, 2014. We agree.

An appeal from the denial of a motion to compel arbitration is expressly authorized under § 435.440.1 of the Missouri Uniform Arbitration Act. *Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 427 (Mo. banc 2003). The parties do not dispute that Motormax had the right to appeal the denial of its motion to compel arbitration under § 435.440.1. Rather, their dispute focuses solely on the finality of the trial court's judgment for purposes of determining the time period within which Motormax had to file its appeal.

Section 435.440.2 provides that "the appeal shall be taken in the manner and to the same extent as from orders or judgments in a civil action." "When statutory language is clear, we must give effect to the language as written." *McCormack v. Capital Elect. Const. Co., Inc.*, 159 S.W.3d 387, 403 (Mo. App. W.D. 2004). "A court may not add words or requirements by implication to a statute that is not ambiguous." *Id*. Giving effect to the plain language of the statute, it is clear that § 435.440.2 instructs that the rules of civil procedure apply to appealable orders under § 435.440.1.

In exercising its supervisory authority over the courts, the Missouri Supreme Court has adopted rules relating to the procedural aspects of appealability. One of these rules is Rule 74.01(a), which defines what constitutes a "judgment," and which states:

> "Judgment" as used in these rules includes a decree and any order from which an appeal lies. A judgment is rendered when entered. A judgment is entered when a writing signed by the judge and denominated 'judgment' or 'decree' is filed.

The Missouri Supreme Court's decision in *Spiece v. Garland*, 197 S.W.3d 594 (Mo. banc 2006) offers guidance regarding the applicability of Rule 74.01(a) to appealable orders. In

*Spiece*, the Court addressed the appealability of orders and judgments listed under § 512.020,[2] in finding that while the statute grants the *substantive* right to an appeal, it does not address the *procedural* requirements for appealing such orders and judgments, and therefore, must be read *in conjunction with* Rule 74.01(a). *Id*. at 595-96. Specifically, the Court clarified that in accordance with Rule 74.01(a), there can be "*no order from which an appeal lies*" unless the decree or order is entered and denominated a "judgment." *Id*. at 595 (emphasis added). Accordingly, by adopting Rule 74.01(a), the Court made clear its intention to require that trial courts designate every appealable order a "judgment" or decree, "even if the order is not equivalent to a judgment in the traditional sense of the word." *Id*. Here, the denial of the motion to compel arbitration was signed by the trial court and denominated a "judgment" when entered. As such, we conclude that the trial court's decision constitutes a judgment "from which an appeal lies" under Rule 74.01(a).

We find the *Spiece* Court's reasoning instructive. That is, while § 435.440.1 grants the substantive right to appeal the denial of a motion to compel arbitration, the statute does not contain any procedural requirements for determining when such orders are final for purposes of calculating the time period for filing an appeal. As such, we look to the rules of civil procedure. Rule 81.04(a) requires the filing of an appeal no later than ten days after the judgment becomes "final." Rule 81.05(a) governs the finality of a judgment for purposes of appeal and states, in pertinent part:

1) A judgment becomes final at the expiration of thirty days after its entry if no timely authorized after-trial motion is filed.[3]

The judgment from which Motormax seeks to appeal was entered by the trial court on October 10, 2014, and became final thirty days later – on November 9, 2014. Rule 81.05(a). To

---

[2] Section 512.020 generally authorizes appeals from certain orders and judgments.
[3] No post-trial motions were filed in this case.

4

be timely, Motormax had to file its notice of appeal within ten days after that date, or by November 19, 2014. Rule 81.04(a). The record shows that Motormax filed its notice of appeal on November 17, 2014, which was within the ten-day time period. The appeal was therefore timely and this Court has jurisdiction.[4] Mr. Knight's motion to dismiss is denied.

### Discussion

We now turn to the merits of Motormax's arguments challenging the denial of its motion to compel arbitration. We review the denial of a motion to compel arbitration *de novo*. *Dunn Indus.*, 112 S.W.3d at 427. We will affirm the trial court's judgment if it is "cognizable under any theory, regardless of whether the reasons advanced by the trial court are wrong or not sufficient." *Gemini Capital Group, LLC, v. Tripp*, 445 S.W.3d 583, 587 (Mo. App. S.D. 2013). Our primary focus is on whether the trial court reached the correct result, rather than the route taken to reach it. *Frye v. Speedway Chevrolet Cadillac*, 321 S.W.3d 429, 435 (Mo. App. W.D. 2010).

In its first point, Motormax argues that the trial court erred in denying its motion to compel arbitration based on its finding that the Agreement was not enforceable for lack of mutual consideration. Motormax also complains that the trial court misapplied the law by failing to analyze whether the Agreement was procedurally and substantively unconscionable.[5] In

---

[4] We acknowledge that our conclusion conflicts with the Southern District's conclusion in *Hershewe v. Alexander*, 264 S.W.3d 717 (Mo. App. S.D. 2008). In *Hershewe*, the court determined that an appeal from an order denying a motion to compel arbitration was untimely because it was not filed within ten days after the order was entered. *Id.* at 718. Citing § 435.440.1, which grants the right to appeal the denial of a motion to compel arbitration, the *Hershewe* court held that the trial court's order was "final and appealable immediately" on the date it was entered. *Id.* In our view, § 435.440.1 does not dictate when such an order becomes final for purposes of calculating the date for filing a notice of appeal. We therefore respectfully disagree with the Southern District's opinion in *Hershewe*.

[5] This argument ignores the clear command of *Brewer v. Missouri Title Loans*, 364 S.W.3d 486, 492 n. 3 (Mo. banc 2012), that Missouri courts need not strictly focus their discussion on whether a contract is either procedurally or substantively unconscionable, but should consider unconscionability in terms of its impact on the formation of the contract. The *Brewer* Court also noted that courts are to look at "the agreement as a whole in determining conscionablilty of [an] arbitration provision." *Id.* at 487.

5

response, Mr. Knight asserts that the trial court properly denied Motormax's motion because the Agreement was unconscionable and unenforceable.[6]

"Missouri contract law applies to determine whether the parties have entered a valid agreement to arbitrate." *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 774 (Mo. banc 2014). (citation and quotations omitted). The party seeking to compel arbitration bears the burden of proving the existence of a valid and enforceable arbitration agreement. *Clemmons v. Kansas City Chiefs Football Club*, 397 S.W. 3d 503, 506 (Mo. App. W.D. 2013). To determine whether arbitration should be compelled, courts must decide if a valid arbitration agreement exists. *Major Cadillac, Inc. v. General Motors Corp.*, 280 S.W.3d 717, 721 (Mo. App. W.D. 2009).

In order to be valid and enforceable, a contract must have adequate consideration. *See Baker*, 450 S.W.3d at 774. Consideration consists either of a promise to do or refrain from doing something, or the transfer or giving up of something of value to the other party. *Frye*, 321 S.W.3d at 438. A contract that contains mutual promises that impose a legal duty or liability on each party constitutes a bilateral contract supported by sufficient consideration. *Id*. However, a contract lacks valid consideration if it purports to contain mutual promises, yet allows one of the parties to retain the unilateral right to modify or alter the agreement as to permit the party to unilaterally divest itself of an obligation it otherwise promised to perform. *Baker*, 450 S.W.3d at 775.

Mutual promises to arbitrate must be binding, not illusory. *Id.* at 776. A promise to arbitrate is illusory when the agreement promises mutuality of arbitration, but effectively allows one party to proceed in court on its claims while the other party is required to resolve its claims by arbitration and is prohibited from taking any action in court. *Id*. at 776-77. Missouri courts

---

[6] In Motormax's Point I, it argues that the arbitration agreement is supported by valid consideration and that the terms of the agreement are not unconscionable. Mr. Knight's Point I responds to Motormax's contention regarding consideration, and his Point II responds to Motormax's argument regarding unconscionability.

6

have consistently invalidated arbitration agreements that contain anti-waiver provisions permitting one party to unilaterally divest itself of its obligation to arbitrate in favor of pursuing claims in court and by other remedies. *See, e.g., Baker*, 450 S.W.3d at 775; *Jimenez v. Cintas Corp.*, ED101015, 2015 WL 160451, at *8 (Mo. App. E.D. January 13, 2015).

Here, the trial court found that the Agreement was unenforceable because it lacked mutuality and was not supported by adequate consideration. In reaching this conclusion, the court found that while the Agreement allowed Motormax to pursue its claims in court and exercise "self-help" repossession, Mr. Knight was required to resolve his claims solely through arbitration.

This case is similar to *Greene v. Alliance Automotive, Inc.*, 435 S.W.3d 646 (Mo. App. W.D. 2014). In that case, after the car buyer allegedly defaulted on the contract, the dealership repossessed her vehicle. *Id*. at 653. When the car buyer filed suit to contest the repossession of her vehicle, the dealership moved to compel arbitration. *Id*. The trial court denied the motion and the dealership appealed. *Id*. at 648. The Western District determined that the arbitration agreement lacked consideration and was, therefore, unenforceable. *Id.* at 654. In so finding, the Court noted that the arbitration agreement contained an anti-waiver provision and allowed the dealership to exercise self-help repossession without waiving arbitration of other disputes. *Id.* Because of this, the Court determined that the agreement "allows [the dealership] to unilaterally divest itself of the promise to arbitrate." *Id.* As a result, the promise to arbitrate was not mutual and, therefore, a bilateral contract based on mutual promises did not exist. *Id.*

The Missouri Supreme Court recently expounded on the *Greene* decision in *Eaton v. CMH Homes, Inc.*, SC94374, 2015 WL 3387910 (Mo. May 26, 2015). The Supreme Court noted that "the promise to arbitrate . . . was illusory" because "the contract promised mutuality of

arbitration then effectively permitted the dealer to proceed in court on all issues including repossession while prohibiting the buyer from opposing replevin or taking any other action in court." *Id.* at *6. The *Eaton* Court differentiated *Greene* from cases where there was a valid agreement to arbitrate, but the terms were unconscionable. *Id.* For example, in *State ex rel. Vincent v. Schneider*, the purchasers of a home entered into a contract with the homebuilder that including an arbitration provision. 194 S.W.3d 853, 855-56 (Mo. banc 2006). The purchasers argued that the agreement was unconscionable because it lacked mutuality in that the agreement allowed solely for the homebuilder to initiate arbitration. *Id.* at 856. The *Vincent* Court found that a lack of mutuality alone did not make the agreement unconscionable. *Id.* at 859. The *Eaton* Court noted that *Vincent* is different from *Greene* because in *Greene*, both parties agreed to arbitrate disputes—a mutual promise—but the dealership was allowed to divest itself of this promise through self-help repossession and the anti-waiver provision. *Eaton*, 2015 WL 3387910, at *6. Therefore, the dealership's promise was illusory and the arbitration agreement was not supported by adequate consideration. *Id.*

The arbitration agreement in the present case also fails for a lack of consideration. Motormax and Mr. Knight entered into the Agreement that contained the following relevant provisions:

> 1.Consumer and Lender agree that *all claims, demands, disputes, or controversies of every kind* or nature that may arise between them concerning any of the negotiations leading to the sale or financing of the Vehicle, representation made during or prior to any such transaction, terms and provisions of the sale, lease or financing agreements, arrangements for financing, disclosures, purchase of insurance, purchase of service contracts, the performance or condition of the Vehicle, credit inquiries or disclosure, trade-in, payoff of existing debt on trade-in, pre-closing delivery, or any other aspects of the Vehicle and its sale or financing *shall be settled by binding arbitration* conducted pursuant to the provision of 9 U.S.C. Section 1, et seq., according to the Commercial Rules of the American Arbitration Association. Without limiting the generality of the foregoing, it is the *intention of the Consumer and Lender to resolve between them*

8

*by binding arbitration all disputes of every kind* and nature made pursuant to state, federal or local law concerning the Vehicle, its sale or financing of the Vehicle, the terms, meaning and enforceability of any of the documents signed or given in connection with the sale, lease, or financing of the Vehicle, or any terms, conditions, or representations made in connection with the financing . . . Consumer hereby waives their right to participate as a representative, claimant or member of any class action pertaining to any claim that is subject to arbitration, as any claim which could be asserted in a class-action proceeding shall be arbitrated.

2.Notwithstanding the foregoing, *excepted from the Agreement are actions at law or in equity by Lender*, Lender [sic] its assignees *to collect any debt owed* by the Consumer, to enforce the provisions of any security agreement securing such debt, *or to exercise any right, including repossession*, that may arise as a result of the failure of Consumer to comply with the provisions of any agreement evidencing such debt or any security agreement securing same or to recover possession of the vehicle if delivered to Consumer prior to consummation of the sale of same. *If any action is brought by Lender* or its assignees that is excepted from arbitration pursuant to this paragraph, *any counterclaim or offset claim that is asserted by the Consumer must nonetheless be arbitrated*. [Emphasis added.]

As in *Greene*, the Agreement contains a self-help provision, which allowed Motormax to repossess Mr. Knight's vehicle without waiving arbitration and without provisional review by any court. In addition, Motormax retained the right to pursue its claims against Mr. Knight in court, while he was required to resolve any claims against Motormax solely through arbitration, including the assertion of any defenses. This could potentially force Mr. Knight to proceed on the same issue in two separate forums, risking inconsistent results, particularly because he would be precluded from asserting any defenses to claims brought against him in court by Motormax. *See Eaton*, at \*12.

"A contract that purports to exchange mutual promises will be construed to lack legal consideration if one party retains the unilateral right to modify or alter the contract as to permit the party to unilaterally divest itself of an obligation to perform the promise initially made." *Greene*, 435 S.W.3d at 653-54 (citation and quotation omitted). Here, there was no binding mutual promise to arbitrate because Motormax could pursue its claims against Mr. Knight in

court in addition to exercising its self-help remedy of repossession without waiving arbitration. Simply put, the Agreement effectively allowed Motormax to unilaterally divest itself of the obligation to arbitrate. In this regard, the promise to arbitrate was illusory. *See Eaton*, at \*13 (citing *Greene*, 435 S.W.3d at 654); *Baker*, 450 S.W.3d at 776-77. Therefore, the Agreement lacks consideration and is unenforceable.

Given the foregoing, Motormax has failed to sustain its burden to prove the Agreement was valid and enforceable. The trial court did not err in denying the motion to compel arbitration. Because we find the arbitration agreement void, we need not address whether the Agreement is unconscionable or the issue of waiver. Point denied.

## Conclusion

The trial court's judgment is affirmed.

_____
Philip M. Hess, Judge

Sherri B. Sullivan, P.J. and
Mary K. Hoff, J. concur.