

# In the Missouri Court of Appeals
# Eastern District

<u>DIVISION FOUR</u>

| | | |
|---|---|---|
| ANGELINA JACKSON, | ) | ED103523 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| v. | ) | 15SL-CC01949-01 |
| | ) | |
| HIGHER EDUCATION LOAN AUTHORITY | ) | Honorable Stephen Goldman |
| OF MISSOURI, | ) | |
| | ) | |
| Appellant. | ) | Filed:  May 31, 2016 |

Higher Education Loan Authority of the State of Missouri ("MOHELA", hereinafter, "Employer") appeals from the trial court's judgment denying its Motion to Compel Arbitration of the employment-related claims lodged by Angelina Jackson ("Employee").  We affirm.

## I.  BACKGROUND

On or about February 6, 2012, Employee began at-will employment with Employer, which continued until October 24, 2013, when Employee was terminated.  Thereafter, on June 9, 2015, Employee filed a petition against Employer in the Circuit Court of Saint Louis County challenging her termination ("Petition").

On September 9, 2015, Employer filed its Motion to Compel Arbitration, alleging, *inter alia*, that Employee, at the commencement of her employment, entered into a binding arbitration agreement and that each claim set forth in Employee's Petition fell under said arbitration

agreement. In response thereto, Employee averred that each element of a contract—offer, acceptance, and consideration—were lacking.

It is undisputed that upon commencement of her employment, Employee was presented with two documents related to the purported arbitration agreement: (1) a two-page document entitled "MOHELA Policy Regarding Mandatory Alternative Dispute Resolution/ADR Process" (hereinafter "Arbitration Process"), and (2) a one-page document, executed by Employee (on February 6, 2012), entitled "Important Acknowledgement of Receipt of MOHELA Mandatory Policy on Alternative Dispute Resolution/ADR Process" (hereinafter, "Acknowledgement of Receipt") (collectively, "ADR Policy").

The Arbitration Process outlines a four-step alternative dispute resolution and arbitration process. However, the Arbitration Process does not subject MOHELA to arbitrate its claims against an employee; rather the Arbitration Process reads, in operable part, as follows:

> This policy is available and applies to all employees (except any employee under any currently effective agreement or letter of appointment signed by the Chairperson of the Board or Executive Director of MOHELA relating to such person's employment, and in such cases, will apply to the extent stated there) who wish to raise an appropriate issue regarding an employee's legally-protected, employment-related rights.

Concurrently with delivery of the Arbitration Process, Employee was provided an Acknowledgement of Receipt, which she duly executed. The Acknowledgement of Receipt is set forth below in its entirety.

<u>IMPORTANT</u>

<u>ACKNOWLEDGEMENT OF RECEIPT OF MOHELA MANDATORY
POLICY ON ALTERNATIVE DISPUTE RESOLUTION/ADR PROCESS</u>

*The Alternative Dispute Resolution policy ("Policy") and its related process offers a quick and fair way to resolve disagreements involving legally-protected, employment-related rights. This Policy contains the rules and procedures MOHELA and its employees covered under this Policy must follow to resolve any*

2

*covered claims through arbitration. This Policy does not waive any covered employee's substantive legal rights, nor does this Policy create or destroy any rights. It merely changes the forum where the dispute is resolved and the procedures to be followed. This Policy does not prevent an employee from filing a charge with an administrative agency like the Equal Employment Opportunity Commission, or the Missouri Commission on Human Rights. However this policy must also be followed by employees.*

Effective June 1, 2015, all employees of MOHELA, its affiliates and subsidiaries shall be subject to the Mandatory Alternative Dispute Resolution/ADR Process Policy, a copy of which I acknowledge receiving. Employees are deemed to have agreed to the provisions of the Policy by virtue of accepting employment with the MOHELA and/or continuing employment with the MOHELA.

Employees are bound by the Policy even if they do not sign this Acknowledgment form.

EFFECTIVE on the next day following May 31, 2005, that I perform work for MOHELA, both MOHELA and I shall be entitled to the benefits of and mutually agree to become subject to the Policy attached to and incorporated in this Acknowledgment.

THIS PAGE TO BE SIGNED BY EMPLOYEE

I ACKNOWLEDGE RECEIPT OF THE MANDATORY ALTERNATIVE DISPUTE RESOLUTION/ADR PROCESS POLICY.

(emphasis in original).

The trial court conducted an evidentiary hearing that was not placed on the record or transcribed. Ultimately, the trial court denied Employer's Motion to Compel Arbitration. In so denying Employer's Motion to Compel Arbitration, the trial court's handwritten judgment—drafted by counsel—explained, in relevant part:

Defendant's Motion to Compel Arbitration and to dismiss or stay called [and] argued. The Court denies the Motion, because of Plaintiff's status as an at-will employee rendering MOHELA's promises illusory and continued at-will employment of an at-will employee is insufficient consideration.

This appeal now follows.

3

## II. DISCUSSION

In its sole point on appeal, Employer contends the trial court erred in denying its Motion to Compel Arbitration. In particular, Employer avers that if the trial court had "rigorously" enforced the terms of the ADR Policy, arbitration should have been compelled, because: (1) there existed a valid arbitration agreement, in that the contractual elements of "offer," "acceptance," and "consideration" were satisfied; (2) Employee's at-will status did not render Employer's promises to become illusory; and (3) the ADR Policy encompassed all claims in Employee's Petition.

### *Standard of Review*

An appellate court's review of a trial court's denial of a motion to compel arbitration is *de novo*. Frye v. Speedway Chevrolet Cadillac, 321 S.W.3d 429, 435 (Mo. App. W.D. 2010); see also Clemmons v. Kansas City Chiefs Football Club, Inc., 397 S.W.3d 503, 505 (Mo. App. W.D. 2013) ("Whether or not arbitration is properly compelled is a question of law that we review *de novo*."). We will affirm the trial court's judgment if it is cognizable under any theory, regardless of whether the reasons advanced by the trial court are wrong or insufficient. Motormax Fin. Servs. Corp. v. Knight, 474 S.W.3d 164, 168 (Mo. App. E.D. 2015). The party seeking to compel arbitration bears the burden of providing the existence of a valid and enforceable arbitration agreement. Jimenez v. Cintas Corp., 475 S.W.3d 679, 683 (Mo. App. E.D. 2015).

### *Analysis*

Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*—which governs the ADR Policy at dispute in the instant matter[1]—an arbitration agreement is "valid, irrevocable, and

---

[1] The FAA governs the applicability of arbitration agreements in all contracts involving interstate commerce or "evidencing a transaction involving commerce." State ex rel. Hewitt v. Kerr, 461 S.W.3d 798, 805 (Mo. banc 2015) (quoting 9 U.S.C. § 2). The Supreme Court of the United States has broadly defined "involving commerce" so as to encompass those arbitration agreement "affecting commerce." Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56 (2003). While Employer and Employee are residents of the State of Missouri and executed the ADR Policy within the borders of Missouri, it cannot be contested that Employer engages in business in multiple states; this is sufficient

4

enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; see also Lawrence v. Beverly Manor, 273 S.W.3d 525, 531 (Mo. banc 2009). We recognize and are cognizant of the public policy established under the auspices of the FAA—that is to actively enforce private arbitration agreements. Greenwood v. Sherfield, 895 S.W.2d 169, 173 (Mo. App. S.D. 1995); Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991) (the purpose of the FAA "was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing at other contracts"); see also Swain v. Auto Servs., Inc., 128 S.W.3d 103, 107 (Mo. App. E.D. 2003) ("[I]f a court determines by ordinary rules of contract interpretation that a valid agreement to arbitrate exists and that the dispute falls within the scope of the agreement, then arbitration must be compelled.").

However, while the FAA frames our examination, prior to a party being compelled to enter arbitration, the trial court is tasked with the duty of determining:  first, whether a valid agreement to arbitrate exists as between the parties; second, whether the specific dispute falls under the substantive scope of that arbitration agreement; and third, whether the agreement is subject to revocation under applicable principles of contract law. Dunn Indus. Grp., Inc. v. City of Sugar Creek, 112 S.W.3d 421, 427-28 (Mo. banc 2003); see also Getz Recycling, Inc. v. Watts, 71 S.W.3d 224, 229 (Mo. App. W.D. 2002) ("A dispute must be arbitrated if there is a valid agreement to arbitrate and the dispute falls within the scope of that agreement."); Jimenez, 475 S.W.3d at 683.

The determination of the existence and validity of an arbitration agreement is determined by our courts as guided by the familiar principles of Missouri contract law and canons of contract

---

so as to cause the ADR Policy to fall under the umbrella of the FAA's application. Kerr, 461 S.W.3d at 805 (citing Citizens Bank, 539 U.S. at 57).

interpretation. Kohner Props., Inc. v. SPCP Grp. VI, LLC, 408 S.W.3d 336, 342 (Mo. App. E.D. 2013); see also Marzette v. Anheuser-Busch, Inc., 371 S.W.3d 49, 52 (Mo. App. E.D. 2012) ("arbitration is a matter of contract, and parties will be compelled to arbitrate their claims only if the arbitration agreement satisfies the essential elements of a valid contract"). Axiomatically, the essential elements of any contract, including one for arbitration, are (1) offer, (2) acceptance, and (3) bargained for consideration. Baker v. Bristol Care, Inc., 450 S.W.3d 770, 774 (Mo. banc 2014) (quoting Johnson v. McDonnell Douglas Corp., 745 S.W.2d 661, 662 (Mo. banc 1988)).

Accordingly, although employers and employees are authorized to freely enter into arbitration agreements, the validity or invalidity, thereof, hinge upon whether said arbitration agreements reflect "the essential contract elements required under Missouri law." Whitworth v. McBride & Sons Homes, Inc., 344 S.W.3d 730, 737 (Mo. App. W.D. 2011). If a valid and enforceable arbitration agreement is wanting, "no action to compel arbitration will lie." Kunzie v. Jack-In-The-Box, Inc., 330 S.W.3d 476, 481 (Mo. App. E.D. 2010).

**Offer**

In overruling Employer's Motion to Compel Arbitration, the trial court found the ADR Policy unenforceable, in that Employee's continued at-will employment was insufficient consideration and that Employee's status as an at-will employee rendered Employer's promises to be illusory. The handwritten judgment, drafted by counsel, reflects only the element of consideration and does not address the first element of a contract—offer. Moreover, insomuch as the evidentiary hearing was conducted off the record, this court is unable to determine the trial court's adjudication regarding offer and acceptance.

Upon review, "[o]ur primary focus is on whether the trial court's result was correct, not the route taken to reach it." Frye, 321 S.W.3d at 435. Thus, while the trial court did not include the

6

first two elements of a contract in its judgment, we find these two elements to be dispositive and elect not to address the element of consideration. See Bowers v. Asbury St. Louis Lex, LLC, 478 S.W.3d 423, 428 n.6 (Mo. App. E.D. 2015) ("Because the trial court could have found no enforceable arbitration agreement was formed between Plaintiff and Defendants, we need not address whether the Agreement is unenforceable for lack of offer and acceptance.").

At common law, "[a]n offer is made when the offer leads the offeree to reasonably believe that an offer has been made." Oakley Fertilizer, Inc. v. Cont'l Ins. Co., 276 S.W.3d 342, 347 (Mo. App. E.D. 2009) (citations omitted). Similarly, pursuant to the Restatement (Second) of Contracts, "[a]n offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Restatement (Second) of Contracts § 24 (1981); see also Baier v. Darden Rests., 420 S.W.3d 733, 738 (Mo. App. W.D. 2014) ("Offer and acceptance requires a mutual agreement. A mutual agreement is reached when the minds of the contracting parties meet upon and assent to the same thing in the same sense at the same time.") (internal citations and quotation marks omitted). Correspondingly, Black's Law Dictionary defines "offer" as "[t]he act or an instance of presenting something for acceptance. . . ." OFFER, BLACK'S LAW DICTIONARY (10th ed. 2014).

As an "offer" presupposes the ability to "accept," we briefly address the element of "acceptance." "Acceptance of an offer is a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer." Restatement (Second) of Contracts § 50. Whether there exists mutual assent sufficient to form a contract is dependent upon the *objective* intentions of the parties. Baier, 420 S.W.3d at 738; see also Don King Equip. Co. v. Double D Tractor Parts, Inc., 115 S.W.3d 363, 368 (Mo. App. S.D. 2003) ("A 'meeting of the minds,' or 'mutual assent' of all parties is essential to the formation of a contract."). The parties' intentions

7

are manifested by reviewing the parties' actions and words. Toms Agspray, LLC v. Cole, 308 S.W.3d 255, 259 (Mo. App. W.D. 2010); White v. Pruiett, 39 S.W.3d 857, 862 (Mo. App. W.D. 2001) ("Whether a contract is made and, if so, what the terms of the contract are, depend upon what is actually said and done and not upon the understanding or supposition of one of the parties."). "Courts of this state have held that whether there was a meeting of the minds is a question of fact for the trial court to decide." Don King Equip. Co., 115 S.W.3d at 368.

Here, it is undisputed that upon commencement of her employment with Employer, Employee was presented with the (1) Arbitration Process and (2) Acknowledgement of Receipt. Both documents are set forth, in relevant parts, supra. After reviewing the plain and unambiguous language of both the Arbitration Process and Acknowledgment of Receipt we conclude, as a matter of law, Employer did not make an offer for Employee's acceptance.

First, there exists no objective manifestation that Employer intended the Arbitration Process and Acknowledgement of Receipt to represent an "offer." Conspicuously absent from both the Arbitration Process and Acknowledgement of Receipt are the terms "contract" or "agreement." Certainly, this court does not attempt to insinuate said terms are indispensable so as to form a contract; however, Employer's use of the terms "policy" (which was used an astounding 21 times in the Acknowledgement of Receipt) and "acknowledgement" reflect a calculated attempt by Employer to camouflage an alleged offer that requires Employee's acceptance. Employer's linguistic smokescreen prevents Employee's (the offeree) awareness of the objective intent of the Employer (the offeror) to enter into an agreement and vice versa. The Arbitration Process and Acknowledgement of Receipt do not signify "the manifestation of willingness to enter into a bargain, so made as to justify another in understanding that his assent to that bargain is invited and will conclude it." Restatement (Second) of Contracts § 24 (1981).

8

Second, the words that are used by Employer reveal that nothing was presented to Employee for her acceptance. The Acknowledgement of Receipt specifically indicates that "Employees are deemed to have agreed to the provisions of this Policy by virtue of accepting employment" and "both [Employer] and [Employee] shall be entitled to the benefits of and mutually agree to become subject to this [ADR] Policy." Nevertheless, the Acknowledgement of Receipt prescribes that the ADR Policy applies to an employee "even if they do not sign this Acknowledgement Form."

There appears to be no consequence for an employee's failure or refusal to sign the Acknowledgement of Receipt; the ADR Policy will apply to an employee regardless of his or her execution of the Acknowledgement of Receipt. The plain language of the Acknowledgement of Receipt states that Employee's employment with Employer is not contingent upon her acceptance of the ADR Policy. It strains rationality for Employer to argue that Employer's mere acknowledgment of her receipt and understanding of the ADR Policy presented equates to Employee's expressed assent to the terms therein. See, e.g., Harmon v. Philip Morris Inc., 697 N.E.2d 270, 272 (Ohio App. 1997) (Employee "merely acknowledged his receipt and understanding of the items presented to him. [Employee] never expressed assent to those terms.").[2]

No offer was presented so as to require Employee's acceptance. Rather, the facts manifest that Employer merely published the ADR Policy to Employee and caused Employee to indicate her receipt of said ADR Policy. See Jennings v. SSM Health Care St. Louis, 355 S.W.3d 526, 534 (Mo. App. E.D. 2011) ("By publishing a severance policy as a part of its general corporate policies and procedures, [the employer] did not make a contractual offer. [The employer's] severance

---

[2] If an attorney were to email a settlement offer to opposing counsel, and opposing counsel were to reply to that email with "I acknowledge I have received your email containing your client's settlement offer," no reasonable attorney would contend that a contract or an agreement had been formed therein.

9

policy simply explained the opportunity for severance was available to qualified employees."); see also McDonnell Douglas Corp., 745 S.W.2d at 662 (an employer's unilateral act of publishing a handbook is not a contractual offer to the employee); Johnson v. Vatterott Educ. Ctrs., Inc., 410 S.W.3d 735, 741-42 (Mo. App. W.D. 2013). Employee's "acknowledgement" of the published ADR Policy does not suddenly transmute the ADR Policy into an acceptance of an offer.

Unlike this court's previous decisions, our disposition is focused upon the element of "offer." We need not directly address the element of "acceptance" as we did in Kunzie, 330 S.W.3d at 483-86 ("If Appellant declined to accept the agreement, then there is no right to arbitration as a party cannot be required to arbitrate a dispute that it has not agreed to arbitrate."), or in Katz v. Anheuser-Busch, Inc., 347 S.W.3d 533, 544-46 (Mo. App. E.D. 2011) ("Given the facts of this case, we find no error in the trial court's finding that Katz did not accept the terms of the DRP[.]"). We need not address the element of "consideration" as we did in Jimenez, 475 S.W.3d at 684-90. This court only addresses the element of "offer," and we find the plain and unambiguous language of the ADR Policy clearly manifests an objective intent to present a policy, not an offer. Much to Employer's dismay, there is no need to review Employer's subjective intent—especially from hindsight—when the objective intent is apparent.

Accordingly, we conclude the trial court appropriately determined Employer failed to establish a valid arbitration agreement was formed as between Employer and Employee. Although we affirm upon the element of offer (and by correlation the element of acceptance) rather than consideration, this court is permitted to affirm the trial court's judgment if it is cognizable under any theory, regardless of whether the reasons advanced by the trial court are wrong or insufficient. Knight, 474 S.W.3d at 168; Frye, 321 S.W.3d at 435 ("Our primary focus is on whether the trial court's result was correct, not the route taken to reach it."); Bowers, 478 S.W.3d at 428 n.6

("Because the trial court could have found no enforceable arbitration agreement was formed between Plaintiff and Defendants, we need not address whether the Agreement is unenforceable for lack of offer and acceptance.").

## III.  CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____

Lisa P. Page, Judge

Sherri B. Sullivan, P.J. and
Kurt S. Odenwald, J., concur.