

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| HAL MILLER, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD82265 |
| | ) | |
| SECURITAS SECURITY | ) | Opinion filed: August 27, 2019 |
| SERVICES USA INC, ET AL., | ) | |
| | ) | |
| Respondents. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI**
**THE HONORABLE JODIE C. ASEL, JUDGE**

Before Division Three: Gary D. Witt, Presiding Judge,
Edward R. Ardini, Jr., Judge and Thomas N. Chapman, Judge

Hal Miller appeals a judgment of the Circuit Court of Boone County granting Securitas Security Services USA, Inc.'s ("Securitas") motion to dismiss Miller's claims and compel arbitration. Miller brought this action against Securitas—his former employer—and Kelli Dorsey ("Dorsey")—a Securitas Human Resources Officer—asserting claims of disability discrimination, religious discrimination, and retaliation under the Missouri Human Rights Act ("MHRA"). Securitas moved to dismiss or, in the alternative, stay Miller's claims and compel arbitration. The trial court granted the motion, dismissed Miller's petition with prejudice, and taxed costs against Miller. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## Factual and Procedural Background

In 2014, Miller was hired by Securitas. On his first day of work, May 13, 2014, Miller was presented with a Dispute Resolution Agreement (the "Agreement"), which provided, in relevant part:

**1. Introduction**

The Document below is the Company's Dispute Resolution Agreement (the "Agreement"). It is an **arbitration agreement** under the Federal Arbitration Act. Under the terms set forth below, both you and the Company mutually agree and thus are required to resolve claims either may have against the other by Arbitration instead of in a court of law.

Your agreement to resolve claims under the Agreement is a condition of your employment. This means that by working at Securitas or continuing to work at Securitas you and Securitas agree that the Agreement will apply to all covered legal claims between you and the Company as specified below. . . .

The Agreement does not otherwise affect your substantive rights under the law; it does, however, require that the parties resolve legal disputes in arbitration. Please read the Agreement carefully, and sign the acknowledgment at the bottom. The Agreement applies to your employment whether or not you sign the acknowledgment, which is intended simply to confirm that you have received and read your copy.

**2. How This Agreement Applies**

This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq., and evidences a transaction involving commerce. This Agreement applies to any dispute arising out of or related to Employee's employment with Securitas Security Services USA, Inc. or one of its affiliates, subsidiaries or parent companies ("Company") or termination of employment and survives after the employment relationship terminates. Nothing contained in this Agreement shall be construed to prevent or excuse Employee from utilizing the Company's existing internal procedures for resolution of complaint, and this Agreement is not intended to be a substitute for using these procedures.

Except as it otherwise provides, this Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. It requires all such disputes to be resolved only by an Arbitrator through final and binding arbitration and not by way of court or jury trial. Such disputes include, without limitation, disputes relating to the interpretation or application of this Agreement. It does not, however, include

disputes over the enforceability, revocability, or validity of the Agreement, or any portion of the Agreement. Those latter questions will be decided in court.

Except as provided otherwise herein, the Agreement applies to all disputes regarding the employment relationship. This, includes, without limitation, to disputes concerning the following: . . . termination, or harassment and claims arising under the . . . Civil Rights Act of 1964, Americans with Disabilities Act, . . . and state statutes, if any, addressing the same or similar subject matters, and all other statutory and common law claims.

. . .

**11. The Arbitration Hearing and Award**

The parties will arbitrate their dispute before the Arbitrator . . . . A court of competent jurisdiction shall have the authority to enter a judgment upon the award made pursuant to the arbitration. The Arbitrator shall not have the power to commit errors of law or legal reasoning, and where allowed by applicable law of the jurisdiction in which the arbitration is held the award may be vacated or corrected on appeal to a court of competent jurisdiction for any such error.

. . .

**13. Enforcement of the Agreement**

This Agreement is the full and complete agreement relating to the formal resolution of employment related disputes. . . .

(emphasis in original).

Miller was also presented with a separate acknowledgment form. That acknowledgment provided in part:

**DISPUTE RESOLUTION AGREEMENT ACKNOWLEDGMENT**

I have received a copy of the Securitas Security Services USA, Inc. (the "Company") Dispute Resolution Agreement (the "Agreement") and I have read and I understand all of the terms contained in the Agreement. I understand that employment or continued employment at the Company constitutes acceptance of this Agreement and its terms. I further acknowledge that the Company and I are mutually bound by this Agreement and its terms.

The acknowledgment was signed and dated "5-13-14" by Hal Miller and "Employer Representative" Amy McNulty.

3

Miller was assigned to work for Securitas client Maxion Wheels in Sedalia, Missouri. On May 17, 2014, he reported to Maxion Wheels. Miller's last day of employment with Securitas was May 22, 2017.

On April 9, 2018, Miller filed this action. In his petition, Miller alleged that he underwent heart surgery in 2015 and, following that surgery, he requested his job requirements be modified so that he would not have to walk up stairs. Miller asserted his requested accommodation was granted and that he was able to complete his job requirements.[1] He further alleged that at the time he was hired by Securitas, he "wore his facial hair as a beard," and that after his surgery, Dorsey directed him to shave his beard. Miller alleged that he refused this request for religious reasons, requested a religious accommodation, and, approximately two weeks later, he was terminated. Miller brought three claims pursuant to the MHRA, each directed at both Securitas and Dorsey (collectively, "Defendants"): disability discrimination and harassment, religious discrimination, and retaliation.

Securitas filed a Motion to Dismiss or in the Alternative Stay Plaintiff's Claims and Compel Arbitration. Attached to the motion were a declaration of Amalia Graham, a Human Resources Manager for Securitas; the Dispute Resolution Agreement; and the Dispute Resolution Agreement Acknowledgment. After briefing, the trial court conducted a hearing on the motion.[2] Thereafter, the trial court issued its Judgment ordering "that Defendants' Motion to Compel Arbitration is sustained." The trial court found that the parties had "a valid and binding agreement to arbitrate" and ordered the parties "to proceed to arbitration under the terms of that agreement."

---

[1] In its responsive pleading, Securitas denied that Miller requested an accommodation based on a medical condition and asserted that Miller "became separated from his employment with Securitas because he failed to complete his security rounds as assigned."

[2] The hearing was not transcribed and the record before this Court does not indicate what, if any, evidence was presented to the trial court at the hearing.

4

The trial court "further ordered that Defendants' Motion to Dismiss is sustained and Judgment be entered in favor of Defendants. Cause is dismissed with prejudice as to both defendants. Court costs taxed to Plaintiff."

This appeal followed.

## Standard of Review

"Whether the trial court should have granted a motion to compel arbitration is a question of law this court reviews *de novo*." *Greene v. Alliance Auto., Inc.*, 435 S.W.3d 646, 649 (Mo. App. W.D. 2014) (internal marks omitted). "However, issues relating to the existence of an arbitration agreement are factual and require our deference to the trial court's findings." *Baier v. Darden Rests.*, 420 S.W.3d 733, 736 (Mo. App. W.D. 2014). Where the trial court does not make factual findings, "all fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." *Id.* at 737 (internal marks omitted) (quoting Rule 73.01(c)); *see also Pearson v. Koster*, 367 S.W.3d 36, 52 (Mo. banc 2012) (where no written factual findings were made, the court viewed "the facts in the light most favorable to the trial court's judgment").

"Our review of the trial court's determination as to the existence of an agreement itself is analogous to that in a court-tried case." *Greene*, 435 S.W.3d at 649 (internal marks omitted). Therefore, we uphold the trial court's judgment "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Kunzie v. Jack-In-The-Box, Inc.*, 330 S.W.3d 476, 480 (Mo. App. E.D. 2010). Additionally, we are required "to affirm the trial court's order on any theory supported by the record." *Baier*, 420 S.W.3d at 737.

**Analysis**

Miller raises three points on appeal: (1) the trial court erred in granting Securitas's motion to compel arbitration as there was no valid arbitration agreement between the parties; (2) the trial court erred in dismissing Miller's case with prejudice; rather, the trial court should have stayed Miller's claims pending arbitration; and (3) the trial court erred in assessing costs against Miller because under the version of the MHRA in effect when Miller's claims accrued, a court may tax costs against a claimant only upon a showing that the case was without foundation, and no such showing was made here. We address each point in turn.

*Point I – Existence of Valid Arbitration Agreement*

Miller appeals the trial court's finding that the parties entered into "a valid and binding agreement to arbitrate." "When faced with a motion to compel arbitration, the motion court must determine whether a valid arbitration agreement exists[.]" *Nitro Distrib., Inc. v. Dunn*, 194 S.W.3d 339, 345 (Mo. banc 2006). In making this determination, "the court should apply the usual rules of state contract law and canons of contract interpretation." *Id.* "The elements required to form a valid contract in Missouri are offer, acceptance, and bargained for consideration." *Baier*, 420 S.W.3d at 737. "Offer and acceptance requires a mutual agreement." *Id.* at 738. "A mutual agreement is reached when the minds of the contracting parties meet upon and assent to the same thing in the same sense at the same time." *Id.* "A meeting of the minds occurs when there is a definite offer and unequivocal acceptance." *Id.* "[W]hether there was a meeting of the minds is a question of fact for the trial court to decide." *Jackson v. Higher Educ. Loan Auth. of Mo.*, 497 S.W.3d 283, 289 (Mo. App. E.D. 2016).

Miller argues that the Agreement "does not constitute a valid contract to arbitrate" because it "was not unequivocally accepted by [Miller] as he was not given a legally cognizable way to

6

accept and there is no meeting of the minds because Respondent Securitas did not unequivocally accept" the Agreement. Miller further argues that Securitas "presented no offer" to Miller. We disagree.

First, we find that Securitas presented Miller with an offer to enter into an arbitration agreement. "At common law, an offer is made when the offer leads the offeree to reasonably believe that an offer has been made." *Jackson*, 497 S.W.3d at 288 (internal marks omitted). "Similarly, pursuant to the Restatement (Second) of Contracts, an offer is the manifestation of a willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Id.* (internal marks omitted).

Here, Securitas presented Miller with a document titled "Dispute Resolution Agreement," which stated in the opening paragraph that it was "an arbitration agreement" and that under the terms of the Agreement, Miller and Securitas "are required to resolve claims either may have against the other by Arbitration instead of in a court of law." The Agreement contained various terms, including the duration of the Agreement, which claims were subject to arbitration, and the manner in which the arbitrator would conduct the hearing and award relief. The Agreement also requested that Miller "read the Agreement carefully, and sign the acknowledgment at the bottom."[3] The acknowledgment form provided that, by signing the form, Miller "acknowledge[d] that [Securitas] and [he] are mutually bound by this Agreement and its terms." By presenting the Agreement to Miller and requesting he sign the acknowledgment form, Securitas manifested its

---

[3] We recognize that the next sentence in the Agreement states that, "[t]he Agreement applies to your employment whether or not you sign the acknowledgment, which is intended simply to confirm that you have received and read your copy." However, as discussed more fully herein, when we consider the Agreement and acknowledgment form as a whole, we find that Securitas made an offer to Miller to enter into an arbitration agreement, which he accepted by signing the acknowledgment form.

7

willingness to enter into an arbitration agreement with Miller under the terms set forth in the Agreement. In other words, Securitas presented Miller with a definite offer.

In arguing that Securitas did not present Miller with an offer, Miller relies on *Jackson v. Higher Education Loan Authority of Missouri*, in which the Eastern District of this Court held that a purported arbitration agreement was not a valid contract because the employer did not make a "definite offer" to the employee to enter into an arbitration agreement. 497 S.W.3d at 289. However, we find *Jackson* distinguishable. The purported agreement in that case consisted of a two-page document describing the employer's multi-step resolution process titled "MOHELA Policy Regarding Mandatory Dispute Resolution/ADR Process" (which only applied to employee claims and not disputes initiated by the employer) and a one-page acknowledgment form, which was executed by the employee upon commencement of her at-will employment. *Id.* at 285-86. The Eastern District found "conspicuously absent" from these documents the terms "contract" or "agreement," and that the employer's use of the terms "policy" and "acknowledgment" was a "linguistic smokescreen" that prevented the employee's "awareness of the objective intent of the Employer (the offeror) to enter into an agreement and vice versa." *Id.* at 289. Thus, the Eastern District found "no objective manifestation that Employer intended the Arbitration Process and Acknowledgment of Receipt to represent an 'offer.'" *Id.*

In the present case, the Agreement and acknowledgment form manifested Securitas's objective intent to enter into a binding contract with Miller. The Agreement was not labeled as a "policy" or "process"; rather, the document was titled "Dispute Resolution Agreement" and the introductory paragraph confirmed in bold lettering that this was an "arbitration agreement." The Agreement also stated that "[n]othing contained in this Agreement shall be construed to prevent or excuse Employee from utilizing the Company's existing internal procedures for resolution of

complaints, and this Agreement is not intended to be a substitute for using these procedures," further advising that the Agreement was a contract, not simply an internal policy. Contrary to the employer in *Jackson*, Securitas did not hide behind "linguistic smokescreens" but instead clearly stated its intent to enter into an arbitration agreement with Miller.

With regard to the other element at issue in this appeal—acceptance—we find that Miller unequivocally accepted Securitas's offer to arbitrate certain employment-related claims. "Acceptance of an offer is a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer." *Jackson*, 497 S.W.3d. at 289. "The critical question when measuring if a party's words or conduct constitute acceptance is whether the signals sent by the offeree to the offeror objectively manifest the [offeree's] intent to be presently bound." *Kunzie*, 330 S.W.3d at 484. "Whether there exists mutual assent sufficient to form a contract is dependent upon the *objective* intentions of the parties," which are determined "by reviewing the parties' actions and words." *Jackson*, 497 S.W.3d at 289 (emphasis in original). "[S]ignatures remain a common, though not exclusive, method of demonstrating agreement." *Morrow v. Hallmark Cards, Inc.*, 273 S.W.3d 15, 22-23 (Mo. App. W.D. 2008).

We find that there was substantial evidence that Miller unequivocally accepted Securitas's offer to arbitrate certain employment-related claims. Miller signed the "Dispute Resolution Agreement Acknowledgment," which provided a signature line for Miller to acknowledge not only his receipt and understanding of the Agreement, but to "further acknowledge that [Securitas] and [Miller] are mutually bound by this Agreement and its terms." Miller signed and dated the acknowledgment form. Based on the foregoing, the trial court was presented with substantial evidence that Miller reasonably believed an offer to enter into an arbitration agreement had been made by Securitas and that Miller manifested his assent to the offer and unequivocally accepted it

by signing the acknowledgment form. *See McIntosh v. Tenet Health Sys. Hosps., Inc.*, 48 S.W.3d 85, 87, 89 (Mo. App. E.D. 2001) (where, as a condition of employment, an employee signed an "Employment Acknowledgment Form" acknowledging receipt of the "Fair Treatment Process brochure" and agreeing to use the Fair Treatment Process and submit claims to arbitration, the parties entered into a valid arbitration agreement).

In arguing that he did not accept Securitas's offer, Miller asserts that his continued employment for Securitas did not constitute "acceptance" under Missouri law, citing *Kunzie v. Jack-In-The-Box*.[4] Again, we find the case cited by Miller distinguishable. The purported arbitration agreement in *Kunzie* contained a clause stating, "I understand that my employment . . . is automatically subject to the terms of this Agreement if I continue my employment[.]" 330 S.W.3d at 478. While a signature appeared under that clause, the employee contested that it was his signature. *Id.* at 478-79. The trial court did not resolve that factual dispute, but instead determined that the employee's "knowledge and conduct of continuing his employment after being presented with the Arbitration Agreement constituted Employee's acceptance of the contract." *Id.* at 482.

The Eastern District of this Court reversed, holding that "the manifestation of an existing employee's unequivocal intention to be bound by an employer's proposed arbitration agreement as a new condition of employment necessitates more than the employee's mere continued work to satisfy Missouri's meeting of the minds requirement." *Id.* at 486. The Court noted that "[s]ilence generally cannot be translated into acceptance," and concluded that the mere continuation of

---

[4] Miller also argues that signing the acknowledgment form did not demonstrate his acceptance because he did not sign on the Agreement itself. Miller has not directed us to any requirement that a signature must appear on the contract itself to constitute acceptance of the contract, nor would such a principle be consistent with the holdings of this Court. *See, e.g.*, *Morrow*, 273 S.W.3d at 22-23 ("With regard to contracts, . . . signatures remain a common, *though not exclusive*, method of demonstrating agreement." (emphasis added)).

10

employment, "*[w]ithout more*," failed to manifest the necessary assent to the purported arbitration agreement. *Id.* at 484 (emphasis added).

Present here is the "more" that was lacking in *Kunzie*. Unlike the employee in *Kunzie*, Miller does not dispute that he signed the "Dispute Resolution Agreement Acknowledgment" form, and, by signing this form, Miller signaled to Securitas his "intent to be presently bound" by the Agreement. *See Kunzie*, 330 S.W.3d at 484; *cf. Frye v. Speedway Chevrolet Cadillac*, 321 S.W.3d 429, 437-38 (Mo. App. W.D. 2010) (suggesting that the employee's signature on an acknowledgment form agreeing to be bound by the dispute resolution program could "establish the second element necessary to form an enforceable contract—acceptance"; dispute resolution program stated that the employee's decision to accept or continue employment meant that the employee had agreed to and was bound by the terms of the Program). In short, Miller's assent was manifested by his act of signing the acknowledgement form; not by his continued employment.

Finally, we disagree with Miller's assertion that there was no "meeting of the minds" in that the Agreement provided "no means by which [Securitas was] to accept" and Securitas did not, in fact, unequivocally accept the Agreement. A Securitas representative signed the acknowledgment form on Securitas's behalf, thereby "acknowledg[ing] that the Company and [Miller] are mutually bound by this Agreement and its terms." By signing her name on the "Employer Representative" line of the acknowledgment form, the Securitas representative manifested Securitas's acceptance of the Agreement. *See Morrow*, 273 S.W.3d at 22-23 ("With regard to contracts, . . . signatures remain a common . . . method of demonstrating agreement."); *cf. Baier*, 420 S.W.3d at 735, 738-40 (where employer did not sign and left blank the "Management Signature" line on the acknowledgment of receipt form, "the trial court could have concluded that no valid arbitration agreement was ever formed" between the parties).

11

Contrary to Miller's claims, we find no error in the trial court's determination that the parties entered into "a valid and binding agreement to arbitrate." Point I is denied.

*Point II – Dismissal with Prejudice*

In Miller's second point, he asserts that the "trial court erred in dismissing the case with prejudice because the case should have been stayed pursuant to RSMo 435.355.4[.]" We agree.

Section 435.355.4[5] provides that "[a]ny action or proceeding involving an issue subject to arbitration *shall* be stayed if an order for arbitration or an application therefor has been made under this section or, if the issue is severable, the stay may be with respect thereto only." (emphasis added). "The use of the word 'shall' in Section 435.355 denotes that the trial court is required to stay proceedings when it finds the claims involved are subject to arbitration." *Hewitt v. St. Louis Rams P'ship*, 409 S.W.3d 572, 574 (Mo. App. E.D. 2013). Thus, "when arbitration is compelled, the trial court should stay the proceedings in its own forum, not dismiss them" and "the proper course of action for the trial court, upon finding an agreement to arbitrate, is to stay the action pending arbitration." *Id.*; *see also Dotson v. Dillard's, Inc.*, 472 S.W.3d 599, 608 n.6 (Mo. App. W.D. 2015) ("dismissal is not the appropriate disposition upon granting a motion to compel arbitration" as "the remedy under both the [Federal Arbitration Act] and Missouri's Uniform Arbitration Act is to stay the proceedings, rather than to dismiss"); *Boogher v. Stifel, Nicolaus & Co., Inc.*, 825 S.W.2d 27, 30 (Mo. App. E.D. 1992) (finding that "the trial court erred by entering a final judgment dismissing the underlying suit" because, "[u]pon finding an agreement to arbitrate, a court, state or federal, shall stay the pending action").

After finding Miller's claims were subject to arbitration, the trial court here dismissed Miller's petition with prejudice. As described above, dismissal was not the proper remedy and the

---

[5] All statutory references are to RSMo 2016 unless otherwise noted.

trial court was required to stay the proceedings pending arbitration. Accordingly, we set aside and vacate the judgment dismissing Miller's claims with prejudice and remand to the trial court to enter an order staying the proceedings pending the completion of the arbitration process. Point II is granted.

*Point III – Costs Taxed to Miller*

In his third point, Miller alleges that the trial court erred in assessing costs against him. Miller argues that the version of the MHRA in effect when his claims accrued only allowed costs to be taxed against a claimant upon a showing that the claimant's case was without foundation, and no such showing was made here. In response, Defendants assert that the 2017 amendments to the MHRA, which changed the standard for assessing costs against a claimant, were procedural and thus apply retroactively. Therefore, Defendants assert, the trial court did not err in retroactively applying the amended version of the MHRA and taxing costs against Miller.[6]

Based on our decision as to Point II, however, we find resolution of this dispute is premature. Regardless of which version of the MHRA applies—the current or prior version—a trial court may only award court costs to "the prevailing party." *See* § 213.111.2, RSMo Supp. 2017; § 213.111.2, RSMo 2000. Because we are vacating the trial court's order of dismissal and remanding with instructions for the trial court to enter an order staying the action pending arbitration, Defendants are not prevailing parties entitled to court costs at this stage in the litigation. *Cf. Lindahl v. State*, 359 S.W.3d 489, 497 n.10 (Mo. App. W.D. 2011) (holding that, because we were remanding the matter for a new trial, the plaintiff's motion for attorney's fees and costs under

---

[6] *Compare* § 213.111.2, RSMo Supp. 2017 ("The court . . . may award court costs and reasonable attorney fees to the prevailing party . . . ; except that, a prevailing respondent may be awarded reasonable attorney fees only upon a showing that the case was without foundation."), *with* § 213.111.2, RSMo 2000 ("The court . . . may award court costs and reasonable attorney fees to the prevailing party . . . ; except that, a prevailing respondent may be awarded *court costs* and reasonable attorney fees only upon a showing that the case is without foundation." (emphasis added)).

section 213.111 was "denied without prejudice to Plaintiff's right to seek attorney's fees, including fees and costs on this appeal, *in the event of recovery on the merits.*" (emphasis added)). Accordingly, we cannot let stand the trial court's award of court costs to Defendants. For this reason, we set aside the judgment taxing court costs to Miller. Point III is granted.

### Conclusion

We affirm the trial court's judgment sustaining Defendants' motion to compel arbitration. However, we set aside and vacate the trial court's judgment sustaining Defendants' motion to dismiss, ordering the cause dismissed with prejudice, and taxing court costs against Miller. We remand with instructions that the trial court enter an order staying the proceedings pending arbitration.

_____
EDWARD R. ARDINI, JR., JUDGE

All concur.