Colleen Dolan, Judge
Anheuser-Busch, LLC ("A-B") appeals the trial court's denial of A-B's motion to compel arbitration in John Esser's ("Respondent's") suit against A-B, which alleged A-B violated the Missouri Human Rights Act by discriminating against Respondent based upon his age. Before the trial court, A-B contended that Respondent's claim fell within A-B's Dispute Resolution Program (the "DRP"), which A-B argues is a valid and enforceable arbitration agreement between the parties. In its sole point on appeal, A-B argues that the trial court erred in denying A-B's motion to compel arbitration because the issue of whether the DRP was a valid and enforceable arbitration agreement was an issue to be determined by an arbitrator pursuant to the DRP's delegation provision. A-B asserts that Respondent failed to specifically challenge the delegation provision, and that the delegation provision therefore controls. Finding that the trial court did not err in denying A-B's motion to compel arbitration, we affirm the judgment of the trial court.
I. Factual and Procedural Background
Respondent has been employed by A-B since 1983, and has held numerous positions during his employment; currently, Respondent holds the position of non-equity market manager. In 1997, A-B implemented its DRP, which created a three-level process for resolving employment-related disputes. A-B distributed the DRP by mailing the document and accompanying information to its employees, including Respondent; A-B also made the DRP accessible on A-B's internal website and held presentations, orientations, and trainings about the DRP and the claims it purported to cover. According to A-B, since 1997, the DRP has become A-B's exclusive method of addressing employment-related disputes. In 2004, A-B revised the DRP, and mailed all employees (including Respondent) a revised copy of the DRP and a letter stating that the DRP "constitutes a binding legal agreement between you [ (the employee) ] and the company," and that the employee's continued employment "after March 31, 2004 means both you and the company have agreed to the terms of the updated [DRP], and that the DRP will be the sole means for resolving any covered claims." The 2004 version of the DRP also contained a delegation provision, which stated that an arbitrator would "have exclusive authority to resolve any dispute relating to the applicability, enforceability or formation of the DRP, including any claim that all or part of the DRP is invalid or unenforceable." Respondent was never required to sign or otherwise affirmatively agree to the DRP or delegation provision.
On May 9, 2017, Respondent filed his action against A-B, alleging that the company had discriminated against him based on his age, and had thus violated the Missouri Human Rights Act. In his first amended petition, Respondent specifically asserted that A-B had taken several adverse actions against him because of his age and/or because he had complained about age discrimination; these actions included downgrading his annual performance *648 ratings, failing to give him pay increases or stock options, and demoting him. Shortly after Respondent filed his first amended petition, A-B filed its motion to compel arbitration, arguing that the DRP constituted an enforceable arbitration agreement, and that arbitration was the exclusive method for resolving Respondent's claim. A-B further argued that, even if the enforceability or validity of the DRP was at issue, that question should also go before an arbitrator because of the DRP's delegation provision. In addition to its memorandum in support of its motion to compel arbitration, A-B also filed exhibits that included the DRP and related documents and an affidavit by A-B's "Senior Director, People - Supply" stating that Respondent had been mailed the DRP and a letter explaining the DRP's effects. In Respondent's memorandum in opposition to A-B's motion to compel, Respondent repeatedly challenged the DRP as a whole and specifically challenged the DRP's delegation provision. Respondent asserted in his memorandum in opposition that both the DRP and the delegation provision were unenforceable because (a) he never accepted the terms of either and (b) neither was supported by consideration. Additionally, as an exhibit to his memorandum in opposition, Respondent filed an affidavit where he attested that he did not recall ever agreeing to the DRP or the delegation provision, that he did not recall ever receiving or reading the DRP, and that he did not recall ever signing a document agreeing to the terms of the DRP.
After hearing arguments and reviewing the memoranda from the parties, the trial court denied A-B's motion to compel arbitration. In its order, the trial court explained that A-B failed to show that Respondent had accepted the DRP, as was required by Missouri case law. Additionally, acknowledging the Supreme Court of Missouri's recent decision in State ex rel. Pinkerton v. Fahnestock, 531 S.W.3d 36 (Mo. banc 2017), the trial court found that, because there was no clear and unmistakable evidence that Respondent had accepted the terms of the delegation provision, the issue of whether the DRP was valid and enforceable was also not subject to arbitration.
This appeal follows.
II. Standard of Review
Whether arbitration should be compelled is a question of law, which we review de novo. Jackson v. Higher Educ. Loan Auth. of Missouri, 497 S.W.3d 283, 287 (Mo. App. E.D. 2016). "However, issues relating to the existence of an arbitration agreement are factual and require our deference to the trial court's findings." Bowers v. Asbury St. Louis Lex, LLC, 478 S.W.3d 423, 426 (Mo. App. E.D. 2015) ; Theroff v. Dollar Tree Stores, Inc., --- S.W.3d ----, ----, 2018 WL 1914851, at *2 (Mo. App. W.D. April 24, 2018).
Because whether a valid and enforceable arbitration agreement exists is a question of fact determined by the trial court, our review is analogous to that of a court-tried case. Bowers, 478 S.W.3d at 426. "The trial court's determination as to the existence of an agreement 'will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law.' " Id. (quoting Katz v. Anheuser-Busch, Inc., 347 S.W.3d 533, 539 (Mo. App. E.D. 2011) ); Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). Here, where the trial court made no findings of fact, Rule 73.01(c) requires that "[a]ll fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result *649 reached."[1] Theroff, --- S.W.3d at ----, 2018 WL 1914851, at *2.
III. Discussion
In A-B's lone point on appeal, it argues that the trial court erred in denying its motion to compel arbitration because, pursuant to the DRP's delegation provision, whether the DRP was a properly-formed and enforceable arbitration agreement is a question for an arbitrator to decide. A-B further argues that the arbitrabililty of Respondent's claim is for an arbitrator to determine because Respondent did not specifically challenge the DRP's delegation provision. We find A-B's arguments unpersuasive.
A. General Principles Governing the Validity of Arbitration Agreements
When determining whether to grant a party's motion to compel arbitration, a trial court must first decide whether a valid and enforceable arbitration agreement exists. State ex rel. Hewitt v. Kerr, 461 S.W.3d 798, 807 (Mo. banc 2015). Pursuant to the Federal Arbitration Act, "arbitration is solely a matter of contract." State ex rel. Pinkerton, 531 S.W.3d at 49 ; 9 U.S.C. § 2. "Accordingly, arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." State ex rel. Pinkerton, 531 S.W.3d at 49. "It is a firmly established principle that parties can be compelled to arbitrate against their will only pursuant to an agreement whereby they have agreed to arbitrate claims." Bowers, 478 S.W.3d at 426 (quoting Whitworth v. McBride & Son Homes, Inc., 344 S.W.3d 730, 737 (Mo. App. W.D. 2011) ) (emphasis is original). If a valid arbitration agreement does not exist, however, then the parties are not required to arbitrate the claim, and the case may proceed in civil court. State ex rel. Hewitt, 461 S.W.3d at 807.
When determining whether a valid arbitration agreement exists, Missouri courts apply state contract law, and require the same essential elements as any contract: offer, acceptance, and consideration. Jimenez v. Cintas Corp., 475 S.W.3d 679, 683 (Mo. App. E.D. 2015) ; Bowers, 478 S.W.3d at 426. "At common law, '[a]n offer is made when the offer leads the offeree to reasonably believe that an offer has been made.' " Jackson, 497 S.W.3d at 288 (quoting Oakley Fertilizer, Inc. v. Cont'l Ins. Co., 276 S.W.3d 342, 347 (Mo. App. E.D. 2009) ). Relatedly, an offeree's acceptance of an offer must be "positive and unambiguous," which signifies assent to the terms proposed by the offeror. Katz, 347 S.W.3d at 544-45 ; Jackson, 497 S.W.3d at 288. Together, "[o]ffer and acceptance requires a mutual agreement[, which] is reached when 'the minds of the contracting parties meet upon and assent to the same thing in the same sense at the same time.' " Baier v. Darden Restaurants, 420 S.W.3d 733, 738 (Mo. App. W.D. 2014) (quoting Kunzie v. Jack-In-The-Box, Inc., 330 S.W.3d 476, 483 (Mo. App. E.D. 2010) ). "Consideration consists either of a promise (to do or refrain from doing something) or the transfer or giving up of something of value to the other party." Bowers, 478 S.W.3d at 426.
B. Respondent's Specific Challenge to the Delegation Provision
Before addressing A-B's point on appeal, we must first address whether Respondent directly challenged the DRP's delegation provision with the required specificity. A-B asserts that Respondent failed to make such a sufficient challenge, *650 and that as a result, the issue of whether the DRP is a valid and enforceable arbitration agreement should also go before an arbitrator.
As the Supreme Court of Missouri explained in State ex rel. Pinkerton , a delegation provision of an arbitration agreement is itself "an additional, severable agreement to arbitrate threshold issues that is valid and enforceable unless a specific challenge is levied against the delegation provision." State ex rel. Pinkerton, 531 S.W.3d at 50. The Court, quoting the Supreme Court of the United States, further explained that "[a]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the ... court to enforce...." Id. at 51 (quoting Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 70, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010) ). As such, the Court reasoned that, unless a party specifically challenges the delegation provision, courts must treat the delegation provision as valid, and enforce it by sending the issue of arbitrability to an arbitrator. Id. The Court explained that the appellant in that case did not specifically challenge the delegation provision of the arbitration agreement, as he had only challenged the validity and enforceability of the arbitration agreement as a whole. Id.
Here, from Respondent's memorandum in opposition to A-B's motion to compel arbitration, it is resoundingly clear that Respondent did indeed specifically challenge the DRP's delegation provision. In particular, Respondent argued that "the DRP nor the DRP's delegation provision contain the necessary elements of a valid contract under Missouri law." (emphasis added). Even more specifically, Respondent argued he had not accepted the terms of the DRP or the delegation provision, asserting that there was "absolutely no evidence in the record ... that [Respondent] ever received or agreed to the terms of the DRP or the delegation provision," and that both the DRP and the delegation provision lacked consideration. While Respondent argued the same theories for why both the DRP and delegation provision were not valid and enforceable (that Respondent had accepted neither and both lacked consideration), this does not mean that Respondent failed to sufficiently challenge the delegation provision with specificity. "A direct challenge is one that specifically addresses the delegation provision." Latenser v. Tarmac Int'l, Inc., 549 S.W.3d 461, 464 (Mo. App. W.D. 2018) (citing Rent-A-Center, W., Inc., 561 U.S. at 72, 130 S.Ct. 2772 ).
A-B's argument that Respondent's challenge is insufficient because he asserted that both the DRP and the delegation provision were invalid and unenforceable for the same reasons is both meritless and illogical. The delegation provision was contained within the DRP itself, and was allegedly mailed to Respondent just like the rest of the DRP. Logically, as A-B attempted to present both the DRP and the delegation provision to Respondent in the same manner and in the same document, Respondent would obviously assert the same validity and enforceability challenges to both the DRP and to the delegation provision in regards to whether either fulfills the essential elements of a contract. Because Respondent (a) specifically named the delegation provision apart from the DRP and (b) asserted deficiencies of the delegation provision that made it invalid and unenforceable, we find that Respondent sufficiently challenged the delegation provision in this case. As such, the trial court correctly proceeded to the issue of whether the DRP's delegation provision, as a severable, antecedent agreement, was valid and enforceable.
C. Validity and Enforceability of the DRP's Delegation Provision *651 Finding that Respondent sufficiently challenged the DRP's delegation provision, we now proceed to A-B's argument that the trial court erred in finding that the delegation provision was not valid because Respondent did not accept its terms. A-B seemingly attempts to sidestep the fact that Respondent did sufficiently challenge the delegation provision with specificity and that A-B failed to present sufficient evidence demonstrating clear and unmistakable intent by Respondent to arbitrate the issue of arbitrability in this case.
"The party seeking to compel arbitration has the burden of proving the existence of a valid and enforceable arbitration agreement." Jimenez, 475 S.W.3d at 683. "When considering whether parties have intended to delegate threshold questions of arbitrability to an arbitrator, '[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clea[r] and unmistakabl[e] evidence that they did so.' " State ex rel. Pinkerton, 531 S.W.3d at 43 (quoting Rent-A-Center, W., Inc., 561 U.S. at 69 n.1, 130 S.Ct. 2772 ). The " 'clear and unmistakable' requirement ... pertains to the parties' manifestation of intent that issues of arbitrability be decided by the arbitrator instead of the court." Id.
Here, A-B filed several exhibits to support its motion to compel arbitration, including the DRP and related documents and an affidavit by A-B's "Senior Director, People - Supply" stating that Respondent had been mailed the DRP and a letter explaining the DRP's effects. Notably, A-B did not provide any evidence showing that Respondent had signed or even received or read the DRP or delegation provision. In addition to Respondent's memorandum in opposition to A-B's motion to compel (arguing that he had not accepted the DRP or the delegation provision and that both lacked consideration), Respondent also filed an affidavit as his sole exhibit, attesting that he did not recall ever receiving or agreeing to either the DRP or the delegation provision, that he did not recall ever reading the DRP, and that he did not recall ever signing the DRP. After reviewing the parties' arguments and exhibits, the trial court denied A-B's motion to compel arbitration. Quoting State ex rel. Pinkerton , the court reasoned that there was not clear and unmistakable evidence demonstrating that Respondent had ever accepted the delegation provision. We agree.
Upon examination of the evidence and arguments presented before the trial court, we find it highly questionable whether the DRP or delegation provision fulfilled any of the three essential elements of a contract (offer, acceptance, and consideration) in this case. In regards to whether A-B ever actually made an "offer," it is inconclusive whether Respondent ever even received or viewed the DRP or the delegation provision. Other than claiming that the DRP and delegation provision were mailed to Respondent, posted to A-B's internal website, and explained in A-B presentations to its employees generally, A-B asserts no facts indicating that Respondent was ever actually aware of the DRP's terms or the delegation provision. As such, we find it difficult to conclude that Respondent could have reasonably believed that an offer had been made if he was never aware of it or its terms. See Jackson, 497 S.W.3d at 288.
Likewise, Respondent could not have accepted an offer that he did not know about. See id. at 289 ("[A]n 'offer' presupposes the ability to accept...."). Further, despite A-B's contention that Respondent had the opportunity to learn about the DRP and delegation provision and that, pursuant to the DRP, his continued employment signified acceptance of the DRP and delegation provision, there is no evidence that Respondent positively and unambiguously accepted either. It has *652 been established that, because silence cannot be translated into acceptance, "the manifestation of an existing employee's unequivocal intention to be bound by an employer's proposed arbitration agreement as a new condition of employment necessitates more than the employee's mere continued work to satisfy Missouri's meeting of the minds requirement." Katz, 347 S.W.3d at 545 ; Kunzie, 330 S.W.3d at 484. The DRP, delegation clause, and facts of this case are remarkably similar to those in Katz , where our Court found that A-B failed to show that an enforceable arbitration agreement existed; as we concluded in Katz , A-B's argument that Respondent's continued employment equated acceptance of the DRP and delegation provision is incorrect. Katz, 347 S.W.3d at 545. "[F]or an acceptance to be effective it must be 'positive and unambiguous.' " Id. The record in this case lacks any indication that Respondent accepted the DRP or delegation provision in such a manner.
Additionally, the record does not contain any evidence of sufficient consideration for either the DRP or the delegation provision, as the DRP stated that A-B may, "at its sole discretion, modify or discontinue the DRP at any time by giving Employees 30 calendar days' notice." While mutual promises to arbitrate are sufficient consideration, Missouri courts have found that reservations to unilaterally amend or modify arbitration agreements cause those promises to arbitrate to be illusory, and as such, cause those purported arbitration agreements to lack sufficient consideration to form a valid contract under Missouri law. Bowers, 478 S.W.3d at 427 (finding that a reservation of a right to modify arbitration rules rendered the respondents' promises to arbitrate illusory); Baker v. Bristol Care, Inc., 450 S.W.3d 770, 776-77 (Mo. banc 2014) (finding that unilateral authority to amend an arbitration agreement made the promise to arbitrate illusory, and not sufficient consideration). Because A-B reserved the right to modify or discontinue the DRP (including the delegation provision within the DRP) at its sole discretion, A-B's promise to arbitrate is illusory, and the delegation provision lacks sufficient consideration to constitute a valid contract.
IV. Conclusion
In this case, Respondent specifically challenged the DRP's delegation provision and A-B failed to establish by clear and unmistakable evidence that the parties agreed to arbitrate the issue of arbitrability. Thus, we find that the trial court's decision to deny A-B's motion to compel arbitration was supported by substantial evidence, was not against the weight of the evidence, and did not erroneously declare or apply the law. A-B's point on appeal is denied.
Kurt S. Odenwald, P.J., and Gary M. Gaertner, Jr., J., concur.

All references are to Missouri Supreme Court Rules (2017).