

# SUPREME COURT OF MISSOURI
## en banc

STATE EX REL. ANHEUSER-BUSCH, LLC, )

                     Relator, )

v. )

THE HONORABLE JOAN L. MORIARTY, )

                   Respondent. )

*Opinion issued December 24, 2019*

No. SC97845

## ORIGINAL PROCEEDING IN PROHIBITION

Anheuser-Busch, LLC ("A-B"), filed a petition for a writ of prohibition directing the circuit court to vacate the portion of its March 5, 2018, order overruling A-B's motion to dismiss and to dismiss the underlying plaintiff's first amended petition with prejudice for failure to state a claim upon which relief could be granted. This Court issued a preliminary writ of prohibition. Because the plaintiff, John Esser, was neither aggrieved nor adversely impacted in Missouri, the MHRA does not provide a remedy for his claims. Considering neither the circuit court nor the court of appeals had the benefit of this Court's opinion in *Tuttle v. Dobbs Tire & Auto Centers, Inc.*, No. SC97721, __S.W.3d__ (Mo. banc Dec. 24, 2019), also issued today, and because an adequate remedy can be provided by appeal, the preliminary writ is quashed.

**Factual Background and Procedural History**

Esser, a resident of Urbandale, Iowa, has worked for A-B since 1983, holding several different positions since that time.[1] In 2007, Esser became a retail sales director over a sales territory that included Iowa, Minnesota, Nebraska, North Dakota, and South Dakota.[2] While Esser was a retail sales director, his direct supervisor, secretary, and other support staff were located in A-B's regional sales office in St. Louis, Missouri. While employed as a retail sales director, Esser made monthly trips to the St. Louis office for meetings, reviews, and training.

Beginning in 2012, Esser alleged A-B began a pattern and practice of discriminating against its older employees in favor of its younger employees.[3] Specifically, Esser alleges the following in his first amended petition:

> (1) In 2012, while in St. Louis, A-B's vice president of sales for the Midwest region informed Esser he was going to receive a performance rating of 3B[4] on his annual performance review, which was lower than his rating the year before;

---

[1] From 1983 until 1988, Esser alleges he worked for A-B throughout Missouri, but he does not allege what his actual job position was or what the extent of his contacts with Missouri were during that time period.

[2] When Esser was not traveling throughout his sales territory, he worked out of his home in Urbandale, Iowa.

[3] Esser was 55 years old at the time his petition was filed with the circuit court.

[4] A performance rating of 3B means an employee is performing adequately and could move laterally within the company. Esser's rating of 3B meant he would not be receiving a pay raise or any stock options. Esser further alleges younger employees, who had a lower performance rating than him, still received pay raises and stock options from A-B.

(2) In 2013, Esser attended a meeting in St. Louis at which A-B's chief financial officer—and later vice president of sales— made questionable remarks about "experienced" and "mature" A-B employees;

(3) In 2013, A-B's vice president of sales for the midwest region informed Esser he was going to receive a performance rating of 1A[5] on his annual performance review;

(4) In 2013, Esser was given an "Expectations Letter" stating he could face termination or other disciplinary action if his performance did not improve in 90 days;

(5) In 2014, during a meeting in St. Louis, Esser was given another 3B rating in his annual performance review, meaning Esser would not receive a pay increase or stock options;

(6) In 2015, Esser's superior—who was located in St. Louis—informed him via telephone call he was receiving a downgraded 1A performance rating on his annual performance review;

(7) In 2015, Esser was informed via telephone call by three A-B directors—two of whom were located in St. Louis—he could not keep his current job as a retail sales director;

---

[5] A rating of 1A means an employee needs to improve performance and would not receive stock options for the current year.

(8) In 2016, a memo was sent from the St. Louis office to all employees in Esser's region stating, effective immediately, Esser was moving to a non-equity market manager position.

Esser filed a charge of discrimination against A-B with the Missouri Commission on Human Rights ("MCHR"). The MCHR provided Esser with a notice of right to sue, and Esser filed suit in the St. Louis City circuit court, alleging age discrimination in violation of § 213.055[6] and retaliation in violation of § 213.070.[7] A-B filed a motion to dismiss, or, in the alternative to compel arbitration. After the first motion to dismiss was filed, Esser amended his petition to include new allegations pertaining to his contacts with Missouri. A-B filed a second motion to dismiss, arguing Esser could not invoke the protections of the MHRA as an Iowa resident and employee. The circuit court overruled both the motion to dismiss and the motion to compel arbitration.[8]

The circuit court's order recognized Missouri's presumption against extraterritorial application of laws, but ultimately concluded Esser stated a claim under the MHRA because "the acts alleged did not occur wholly outside of Missouri." After the court of appeals denied writ relief, A-B sought a writ of prohibition from this Court directing the circuit court to vacate the portion of its order overruling A-B's motion to dismiss and to

---

[6] All statutory references are to RSMo 2016, unless otherwise provided.

[7] Esser's retaliation claim arose from a 2013 phone call he made to A-B directors located in St. Louis. During the phone call, Esser expressed he was being discriminated against by A-B because of his age. Esser also alleges he informed the vice president of sales for the Midwest region of these complaints via a letter dated September 19, 2013.

[8] Pursuant to § 435.440, A-B immediately appealed the portion of the circuit court's order denying the motion to compel arbitration. The court of appeals affirmed the denial. *See Esser v. Anheuser-Busch, LLC*, 567 S.W.3d 644 (Mo. App. 2018). Because this Court denied A-B's applications for transfer as to that portion of the motion, it is not an issue considered in this opinion.

4

dismiss Esser's first amended petition with prejudice for failure to state a claim upon which relief could be granted. This Court issued a preliminary writ of prohibition. At the time of these rulings neither the circuit court nor the court of appeals had the benefit of this Court's opinion in *Tuttle v. Dobbs Tire & Auto Centers, Inc.*, __S.W.3d__ (Mo. banc 2019). It is argued this Court could exercise its discretion to make the preliminary writ permanent or, in the alternative, quash the preliminary writ to give the circuit court the opportunity to reconsider the motion to dismiss in light of *Tuttle*. As demonstrated by *Tuttle*, A-B has an adequate remedy on appeal. *See* Rule 84.22(a).

## Standard of Review

This Court has jurisdiction to issue original remedial writs. Mo. Const. art. V, § 4.1.

> A writ of prohibition is appropriate: (1) to prevent the usurpation of judicial power when a lower court lacks authority or jurisdiction; (2) to remedy an excess of authority, jurisdiction or abuse of discretion where the lower court lacks the power to act as intended; or (3) where a party may suffer irreparable harm if relief is not granted.

*State ex rel. Key Ins. Co. v. Roldan*, No. SC97623, 2019 WL 5558334, at *1 (Mo. banc Oct. 29, 2019).

## Analysis

## I.

"The MHRA protects important societal interests by prohibiting unlawful employment practices on the basis of . . . age." *Tuttle*, SC97721, at *4 (alterations in original). "It shall be an unlawful employment practice . . . [f]or an employer, because of the . . . age . . . of any individual . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such

5

individual's . . . age." § 213.055.1(1)(a). The MHRA requires a person be aggrieved by an unlawful discriminatory practice before filing a complaint with the MCHR. *See* § 213.075.1 ("Any person claiming to be ***aggrieved*** by an unlawful discriminatory practice may make, sign and file with the commission a verified complaint in writing[.]" (emphasis added)); § 213.111.1 ("[T]he commission shall issue to the person claiming to be ***aggrieved*** a letter indicating his or her right to bring a civil action[.]" (emphasis added)).

The MHRA defines the phrase "unlawful discriminatory practice" as "any act that is unlawful under this chapter." § 213.010(18). "Aggrieved" is not defined by the MHRA. "In the absence of statutory definitions, the plain and ordinary meaning of a term may be derived from a dictionary, and by considering the context of the entire statute in which it appears." *Mantia v. Mo. Dep't of Transp.*, 529 S.W.3d 804, 809 (Mo. banc 2017) (emphases omitted). The word aggrieved means "showing grief, injury, or offense; having a grievance; specif: suffering from an infringement or denial of legal rights." WEBSTER'S THIRD NEW INT'L DICTIONARY 41 (3d ed. 2002). This Court held in *Kader v. Board of Regents of Harris-Stowe State University*, 565 S.W.3d 182 (Mo. banc 2019), and reaffirmed most recently in *Tuttle* that "an allegedly discriminatory act must have had some adverse impact on the plaintiff before it becomes actionable." *Tuttle*, SC97721, __ S.W. 3d at *5 (internal quotation and emphasis omitted)*; see also Kader*, 565 S.W.3d at 189. "Said another way, it is the adverse impact that is actionable under the MHRA, but only if that adverse impact resulted from a prohibited discriminatory practice." Tuttle, SC97721, __ S.W. 3d at *5.

6

The relevant facts of this case are similar to *Tuttle*. In *Tuttle,* the plaintiff, an Illinois resident, worked exclusively in Illinois for Dobbs Tire as a store manager. Tuttle alleged Dobbs Tire discriminated against him because of his age by transferring him to a lower performing store, transferring a number of illegitimate expenses to Tuttle's store to distort its profit numbers, and making him sign certain documents younger store owners did not have to sign. Tuttle alleged Dobbs Tire's actions amounted to his constructive discharge from the company. Tuttle tendered his resignation and filed a lawsuit in the circuit court of St. Louis County, claiming both age discrimination and retaliation in violation of the MHRA.

In evaluating Tuttle's claims, this Court first looked to the language of the MHRA, noting that a plaintiff must be aggrieved before having an actionable claim under the MHRA. Next, the Court looked to its previous declaration in *Kader*, that a plaintiff must have suffered an adverse impact from an allegedly discriminatory act before a claim is actionable under the MHRA. Because Tuttle's claims of adverse impact—specifically the loss of Illinois wages, loss of benefits of his Illinois employment, and mental anguish arising from his discharge from his Illinois job—all occurred outside of Missouri, the MHRA does not provide a remedy. *Tuttle*, at *6. Neither Esser nor the concurring opinion

7

pointed to any text in the MHRA suggesting it was intended to provide relief for Esser's claims. As such, *Tuttle*'s reasoning applies with equal force here. [9]

Like Tuttle, Esser alleges he can invoke the protections of the MHRA because the alleged discriminatory decision making process occurred in Missouri. Several adverse impacts allegedly arose from this process, including lower performance reviews in regards to his Iowa job, loss of wages and employment benefits from his Iowa job, emotional distress because of actions taken toward his Iowa job, and demotion from his Iowa job. As recently reaffirmed in *Tuttle*, however, it is not the decision making process giving rise to relief under the MHRA. The right to relief comes from being aggrieved by or suffering an adverse impact from the allegedly discriminatory practice. Taking all of Esser's allegations

---

[9] As explained in *Tuttle*:

> [T]his Court applies the long-standing presumption that Missouri statutes, absent express text to the contrary, apply only within the boundaries of this state and have no extraterritorial effect. *Rositzky v. Rositzky*, 46 S.W.2d 591, 595 (Mo. 1931) ("[I]t is the settled law and almost axiomatic that the statutes of a state or country prescribe the law within its boundaries only, and have no extraterritorial force or effect.") . . . To evade the presumption, Tuttle alleges that he is not asking this Court to apply the MHRA extraterritorially because certain decisions were made in Missouri. While decisions may have occurred in Missouri, decisions are not actionable under the MHRA; adverse impacts from discriminatory practices are actionable. With no actionable adverse impact in Missouri, Tuttle is asking for this Court to apply the MHRA to a purely extraterritorial event. Moreover, the MHRA contains no express text evidencing the necessary intent to allow for its extraterritorial application. While Tuttle may have been aggrieved, he was aggrieved in Illinois. Therefore, the presumption against extraterritorial application precludes the application of the MHRA to Tuttle's age discrimination and retaliation claims.

*Tuttle*, at *6-7 (footnotes omitted).

8

as true, the only place where he may have been aggrieved or suffered an adverse impact from an allegedly discriminatory practice is Iowa.

## II.

"If relator has an adequate remedy by appeal, prohibition will be denied." *State ex rel. Baldwin v. Dandurand*, 785 S.W.2d 547, 549 (Mo. banc 1990). "The right to appeal did not exist at common law and is conferred by statute." *Id.* Section § 512.020 provides:

> Any party to a suit aggrieved by any judgment of any trial court in any civil cause from which an appeal is not prohibited by the constitution, nor clearly limited in special statutory proceedings, may take his or her appeal to a court having appellate jurisdiction from any:
> . . . .
>
> (5) Final judgment in the case or from any special order after final judgment in the cause; but a failure to appeal from any action or decision of the court before final judgment shall not prejudice the right of the party so failing to have the action of the trial court reviewed on an appeal taken from the final judgment in the case.

A-B does not have the instant right to appeal the circuit court's overruling of its motion to dismiss, as the circuit court's judgment did not dispose of any—much less all—issues in the case.[10] However, § 512.020 provides A-B with the opportunity to appeal once

---

[10] "A judgment may dispose of fewer than all claims against all parties. Rule 74.01(b). Such a judgment is final for purposes of appeal if it disposes of at least one judicial unit and the circuit court expressly finds there is no just reason for delay. Otherwise, when a judgment is entered in the case disposing of the last claim, that becomes the final judgment for purposes of appeal and it necessarily incorporates all prior orders or judgments that adjudicated some – but fewer than all – of the claims and the rights and liabilities of all the parties." *State ex rel. Henderson v. Asel*, 566 S.W.3d 596, 598 n.2 (Mo. banc 2019) (Internal citations and quotations omitted).

9

a final judgment is entered in the underlying case. "Because the remedy of appeal is available, prohibition will be denied." *Dandurand*, 785 S.W.2d at 550.

## Conclusion

An MHRA claim is not actionable until one is aggrieved by an allegedly discriminatory practice. Because Esser was aggrieved solely in Iowa, the MHRA does not provide him with relief. Even though it is argued this Court could exercise its discretion to make the preliminary writ permanent, for prudential reasons it is more appropriate to quash the preliminary writ to allow the circuit court to reconsider the motion to dismiss in light of *Tuttle*. Additionally, "No original remedial writ shall be issued by an appellate court in any case wherein adequate relief can be afforded by an appeal or by application for such writ to a lower court." Rule 84.22(a). Because A-B may seek relief by appeal after a final judgment, making the preliminary writ permanent would be inappropriate. The preliminary writ was improvidently granted and the same is quashed.

_____
Zel M. Fischer, Judge

Wilson, Russell, and Powell, JJ., concur;
Draper, C.J., concurs in result only in separate opinion filed;
Breckenridge and Stith, JJ., concur in opinion of Draper, C.J.

10



# SUPREME COURT OF MISSOURI
## en banc

STATE EX REL. ANHEUSER-BUSCH, )
LLC, )
                                    )
                 Relator, )
                                    )
v.                                       )     No. SC97845
                                      )
THE HONORABLE JOAN L. )
MORIARTY, )
                   Respondent. )

## OPINION CONCURRING IN RESULT ONLY

The principal opinion quashed a preliminary writ of prohibition concerning the circuit court's dismissal of John Esser's (hereinafter, "Esser") age discrimination and retaliation claims brought pursuant to the Missouri Human Rights Act (hereinafter, "MHRA") against Anheuser-Busch, LLC (hereinafter, "A-B"). Consistent with my dissenting opinion in *Tuttle v. Dobbs Tire & Auto Centers, Inc.*, No. SC97721, ___ S.W.3d ___ (Mo. banc December 24, 2019), I believe Esser's petition states a claim for relief when applying this Court's standard of review. Further, I believe there is no legal support for the principal opinion's proposition that a claimant must demonstrate he or she was "aggrieved" or incurred "an adverse impact" as an element of a discrimination claim or

that a decision is insufficient to satisfy this newly announced element. Therefore, I would quash the writ for different reasons.

The MHRA regulates employer conduct by prohibiting employers from engaging in unlawful discriminatory practices. Section 213.055.1(1)(a)[1] provides "[i]t shall be an unlawful employment practice … [f]or an employer … to discriminate against any individual … because of such individual's … age …." "Specifically, [section] 213.055 is a remedial prohibition against discrimination in the employment context." *Howard v. City of Kan. City*, 332 S.W.3d 772, 779 (Mo. banc 2011). "Remedial statutes should be construed liberally to include those cases which are within the spirit of the law and all reasonable doubts should be construed in favor of applicability to the case." *Lampley v. Mo. Comm'n on Human Rights*, 570 S.W.3d 16, 23 (Mo. banc 2019) (quoting *Mo. Comm'n on Human Rights v. Red Dragon Rest., Inc.*, 991 S.W.2d 161, 166-67 (Mo. App. W.D. 1999)). This liberal construction comports with the standard of review when examining the circuit court's ruling on a motion to dismiss, which requires this Court to assume all facts alleged in Esser's petition are true and all reasonable inferences to be drawn from those facts must be in Esser's favor. *Jackson v. Barton*, 548 S.W.3d 263, 267 (Mo. banc 2018).

Although Esser pleaded the elements of an age discrimination claim, the principal opinion inexplicably adds an additional hurdle requiring Esser to demonstrate he is "aggrieved" or has incurred an "adverse impact" that occurred in Missouri to state a claim

---

[1] All statutory references are to RSMo 2016.

under the MHRA. "In construing a statute, courts cannot 'add statutory language where it does not exist'; rather, courts must interpret 'the statutory language as written by the legislature.'" *Peters v. Wady Indus., Inc.*, 489 S.W.3d 784, 792 (Mo. banc 2016) (quoting *Frye v. Levy*, 440 S.W.3d 405, 424 (Mo. banc 2014)). At the time Esser filed his claim, section 213.055 required a plaintiff alleging age discrimination to demonstrate only: "(1) the plaintiff is a member of a protected class; (2) the defendant discharged plaintiff; (3) plaintiff's age was a contributing factor in such discharge; and (4) plaintiff was damaged." *Thomas v. McKeever's Enter. Inc.*, 388 S.W.3d 206, 214 (Mo. App. W.D. 2012).[2] Section 213.055 does not require a person to demonstrate he or she was "aggrieved" or suffered an "adverse impact"—in Missouri—to state a claim for discrimination.

The principal opinion's reliance on section 213.075.1, which permits "any person claiming to be aggrieved by an unlawful discriminatory practice may make, sign and file with the commission a verified complaint in writing" is unavailing. This same statutory section permits the attorney general to likewise file a complaint.[3] Certainly the attorney general cannot demonstrate he or she is "aggrieved" or suffered "an adverse impact" when filing a complaint challenging an unlawful discriminatory practice.

---

[2] *Thomas*' statement that a plaintiff must demonstrate his or her membership in a protected class was a contributing factor in a plaintiff's discharge was abrogated by the 2017 MHRA amendments. However, Esser filed his discrimination petition before the 2017 amendments took effect.

[3] This contrasts with the attorney general's power to file a civil suit to challenge violations of the MHRA pursuant to section 213.126.

The principal opinion perpetuates its faulty reliance on *Kader v. Board of Regents of Harris-Stowe State University*, 565 S.W.3d 182, 189 (Mo. banc 2019), for the proposition that a discriminatory act "must have had some ***adverse impact*** on the plaintiff before it becomes actionable" under the MHRA. *Kader* addressed whether the employer's action constituted an unlawful discriminatory practice as submitted in a jury instruction. *Id*. at 186-90. *Kader* did not address *where* the unlawful discriminatory practice occurred.

The principal opinion also relies on *Kader* to support its holding that an employer's decision cannot give rise to a cause of action. However, contrary to the principal opinion's assertion, *Kader* contains no such language to this effect. This Court has held where an employer's decision making occurred is a relevant inquiry in determining *where* a discriminatory practice occurred, not *if* a discriminatory practice occurred. *Igoe v. Dep't of Labor & Indus. Relations of Mo.*, 152 S.W.3d 284, 288 (Mo. banc 2005).

When examining Esser's petition under the appropriate standard of review, Esser has pleaded copious facts demonstrating A-B engaged in unlawful discriminatory practices in Missouri such that Esser's claims should proceed. Esser reported to a regional sales office located in St. Louis. From 2010 to 2016, Esser's retail sales director position was based out of the midwest sales office located in St. Louis. Esser's immediate supervisor, secretary, other support staff, and the human resources department were located in St. Louis. Esser visited St. Louis at least monthly for meetings, training, and employee reviews. Notably, Esser attended several employee reviews either in St. Louis or while speaking with St. Louis personnel via telephone. At these meetings, Esser received the lower job performance reviews, which impacted his salary, benefits, and stock options.

4

During one such review in St. Louis, Esser was told although he was eligible for a promotion, A-B was looking to enhance the salary and incentives of employees who had a "long term future" with A-B, ostensibly to the detriment of Esser, who was fifty-one years old at the time. Esser attended training in St. Louis in which an A-B vice president told managers to not be afraid to let "experienced" employees go because the company had a "full bench of young people." This same vice-president encouraged other vice presidents to look for "mature" people in the company and find "a way to move them on." Esser formally complained to his supervisor and human resources about these instances impacting older employees. Thereafter, Esser received a lower performance review, was issued no stock options, and was demoted before he resigned. Esser also was told A-B was "looking to replace positions with younger people" and became aware of a meeting with employees under the age of forty from Esser's region who were encouraged and enticed to remain employed with A-B, while employees older than forty were not included. Hence, I would hold the numerous decisions and practices that occurred in Missouri, which Esser alleged constituted unlawful discriminatory practices, are actionable under the MHRA.

The principal opinions analogizes this case to *Tuttle*. Without diminishing *Tuttle*'s factual pleadings, Esser undoubtedly presents an even stronger connection between A-B's alleged unlawful practices and Missouri than in *Tuttle*.

The principal opinion blithely dismisses Esser as merely working at "his Iowa job," but Esser worked for a Missouri employer for more than thirty years and performed components of that job in Missouri. When taking his petition allegations as true, a Missouri employer subjected Esser to unlawful discriminatory practices that occurred in Missouri

5

for several years. The principal opinion disregards the focus and purpose of the MHRA to regulate the conduct of Missouri employers, not to require employees who have been subjected to unlawful discriminatory practices to plead and prove elements not required by the statute. Missouri employers should be held accountable for engaging in unlawful discriminatory practices occurring in Missouri and causing harm to their employees, even if those employees are located in another state. The principal opinion encourages Missouri employers to engage in unlawful discriminatory practices against its out-of-state employees with impunity, knowing their decision to engage in those insidious practices will not be actionable in Missouri.

Based on the foregoing, I would quash A-B's writ of prohibition and allow Esser's claims to proceed.

_____
GEORGE W. DRAPER III, JUDGE

6