

# In the Missouri Court of Appeals
# Eastern District

## DIVISION ONE

| | | |
|---|---|---|
| JACQUELINE HARRIS, | ) | No. ED109162 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | |
| | ) | Honorable Stanley J. Wallach |
| VOLT MANAGEMENT CORPORATION, | ) | |
| ET AL., | ) | |
| | ) | |
| Appellant. | ) | Filed: May 18, 2021 |

## I. Introduction

Volt Management Corp., d/b/a Volt Workforce Solutions ("Volt"), and Volt Information Sciences, Inc. (collectively, "Appellants") appeal from the order of the Circuit Court of St. Louis County denying its motion to compel arbitration. Appellants raise two points on appeal. In their first point on appeal, Appellants argue that the circuit court erred in denying their motion to compel arbitration because the arbitration agreement contains a valid delegation provision mandating that the arbitrator has the exclusive authority to decide threshold issues of arbitrability. In their second point on appeal, Appellants alternatively argue that, even if the delegation provision does not apply, the circuit court still erred in denying their motion because a valid arbitration agreement exists between the parties.

We affirm.

## II. Factual and Procedural Background

Volt provides staffing, outsourcing, and information technology infrastructure services to businesses worldwide. On or about April 18, 2017, Volt hired Jacqueline Harris ("Respondent") as an at-will employee. Volt provided Respondent with the Volt Workforce Solutions Employee Guide ("Employee Guide") sometime after hiring her. The Employee Guide provides employees with "general information about Volt's rules, policies, plans, procedures and practices concerning the terms and conditions" of their employment with Volt. The Employee Guide was prepared by Volt and specified that Volt reserved the unilateral right to change or rescind the current policies, practices, procedures, and benefits "at any time with reasonable notice where practicable at Volt's discretion."[1]

Page 24 of the Employee Guide, entitled "Travel expense policy | Arbitration," contains information on Volt's travel expense policy, as well as the arbitration agreement at the center of this case. The Arbitration section, in its entirety, provides as follows:

> Volt believes that alternative dispute resolution is the most efficient and mutually satisfactory means of resolving disputes between Volt and its employees.
>
> Any dispute, controversy or claim which arises out of, involves, affects or relates in any way to your employment with Volt or a claimed breach of the employment relationship or the conditions of employment or the termination of employment, or in any way arising out of, involving, affecting or related to any assignment or termination of any assignment with any customer of Volt, and/or disputes, controversies or claims arising out of or related to the actions of Volt, Volt's employees or Volt's customer, or customer's employees under Federal, State and/or local laws shall be resolved by final and binding arbitration, pursuant to the Federal Arbitration Act, in accordance with the applicable rules of the American Arbitration Association (www.adr.org) in the state where you are employed by Volt. The arbitrator may be entitled to award reasonable attorneys' fees and costs to the prevailing party, in accordance with the law. The award shall be in writing, signed by the arbitrator, and shall provide the reasons for the award. Judgment upon the arbitrator's award may be filed in and enforced by any court having

---

[1] Volt uses slightly different language throughout the Employee Guide when reserving its right to make unilateral changes to its policies and more. However, these differences are immaterial. We will occasionally refer to this language as "reservation of rights language" throughout this opinion.

jurisdiction. This does not prevent you from filing a charge or claim with any governmental administrative agency as permitted by applicable law.

Your continued employment with Volt is your agreement to the above provision requiring arbitration of any and all employment/assignment disputes.

The following page of the Employee Guide, entitled "Acknowledgement," contains a brief, one-page form for the employee to acknowledge receipt of the Employee Guide. The Acknowledgement has lines for the employee to sign and print his or her name and date, as well as a line for a Volt representative to print his or her name. The form reads as follows:

I have received and reviewed my copy of the Volt Employee Guide and understand that:

- This guide is intended to provide me with information about Volt's general policies.

- I am employed at-will, which means that Volt and I each have the right to terminate the employment relationship at any time, with or without cause.

- I must follow the policies described in this Guide, including Volt's policies prohibiting workplace discrimination and harassment.

- A violation of any of the rules or policies of Volt or its clients may result in disciplinary action, up to the immediate termination of my assignment or employment by Volt.

- Volt has the right to change, interpret or cancel any of its rules, policies, benefits, procedures or practices at Volt's discretion, upon reasonable notice where practicable.

- Volt's policies may change from time to time; therefore, I agree to check with my Volt representative if I have a specific question about any Volt policy or practice.

Except as otherwise stated, I agree to arbitrate any and all disputes related to my employment or assignment(s) with Volt, as discussed in this Guide.

In her affidavit filed in connection with Respondent's motion in opposition to the motion to compel arbitration, Respondent attested that she received and completed a standalone

3

Acknowledgement form on April 18, 2017, *prior* to receiving a full copy of the Employee Guide. However, no Volt representative printed his or her name on the same page. The record indicates that Respondent needed to return the signed Acknowledgement by April 20, 2017—before she received the Employee Guide, according to the affidavit.

On April 28, 2017, Volt assigned Respondent to work for bioMérieux, Inc., in Hazelwood, Missouri, on a temporary contract. While Respondent worked at bioMérieux, her coworkers began harassing her. The day after reporting the harassment to her supervisor, Respondent began receiving hostile and threatening text messages directed at her and her son. Respondent filed for orders of protection against two individuals she believes sent her the threatening messages on February 3, 2018. At least one of these individuals worked with Respondent. Once Respondent's supervisor learned about the pending orders, she informed Respondent that bioMérieux would terminate her employment if she did not cancel them. Respondent attempted to save her job by requesting a dismissal of the orders on February 14, 2018, but the St. Louis County Sheriff served the petitions later that day, leading to Respondent's firing.

Respondent filed suit against Appellants and bioMérieux on January 7, 2020, asserting claims for wrongful termination and retaliation against Appellants and bioMérieux, and alternative claims against Appellants and bioMérieux for violations of the Whistleblower Protection Act and civil conspiracy. She also brought an alternative claim for tortious interference with a business expectancy against bioMérieux alone. On the basis of the Arbitration section of the Employee Guide, Appellants then moved to compel arbitration of Respondent's claims on March 24, 2020 ("Motion to Compel"), which Respondent opposed. On

4

August 18, 2020, the circuit court denied the Motion to Compel, highlighting a lack of consideration in the Employee Guide for the purported agreement to arbitrate.

This appeal follows.

### III. Standard of Review

The denial of a motion to compel arbitration, absent any factual disputes between the parties, is reviewed *de novo*. *Theroff v. Dollar Tree Stores, Inc.*, 591 S.W.3d 432, 436 (Mo. banc 2020). The validity of a delegation provision—a separate agreement to arbitrate threshold questions of arbitrability—is a legal issue and similarly receives *de novo* review. *Id.* (citing *State ex rel. Newberry v. Jackson*, 575 S.W.3d 471, 474 (Mo. banc 2019)).

However, when the parties to a purported arbitration agreement dispute whether an agreement exists in the first place, a question of fact arises, and "the circuit court shall conduct an evidentiary hearing to determine whether an arbitration agreement exists." *Id.* (citing § 435.355.1, RSMo (2016)). Appellate review of such a determination is "analogous to that in a court-tried case." *Id.* "[I]n an appeal from a circuit court's order overruling a motion to compel arbitration when there is a dispute as to whether the arbitration agreement exists, the circuit court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Id.* (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)).

In this case, Respondent disputes whether an agreement to arbitrate exists in the first place, arguing that the deferential standard of review under *Murphy v. Carron*, 546 S.W.2d 30 (Mo. banc 1976), should apply to the circuit court's decision. However, Respondent's most relevant arguments pertain to the illusory nature of the purported promises to arbitrate, not the existence of the agreement in the first place; therefore, our resolution of both of Appellants'

5

points on appeal requires an interpretation of the terms of the Employee Guide containing the arbitration agreement, not review of any factual disputes.[2] "[A]rbitration is a matter of contract," *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67, 130 S. Ct. 2772, 2776, 177 L. Ed. 2d 403 (2010), and "contract interpretation is a question of law." *Theroff*, 591 S.W.3d at 436 (citing *State ex rel. Pinkerton v. Fahnestock*, 531 S.W.3d 36, 44 (Mo. banc 2017). "[A] *de novo* standard of review is appropriate for appellate review of a denial of a motion to compel arbitration when a court must analyze the terms of an arbitration agreement." *Id.* Accordingly, we review this case *de novo* because we must analyze the terms of the Employee Guide, arbitration agreement, and delegation provision.

## IV. Discussion

In their first point on appeal, Appellants argue that the circuit court erred in denying their motion to compel arbitration because their purported arbitration agreement with Respondent contains a valid delegation provision mandating that the arbitrator has the exclusive authority to decide threshold issues of interpretation, applicability, enforceability, and formation of the arbitration agreement. Appellants claim that they agreed upon a "clear and unmistakable" delegation provision that, severed from the rest of the arbitration agreement and considered by itself, is a bilateral contract supported by consideration. In their second point on appeal, Appellants argue alternatively that, even if the delegation clause is not enforceable, the circuit court nevertheless erred in denying their Motion to Compel because offer, acceptance, and consideration were present to create a valid arbitration agreement and because Respondent's claims fall within the substantive scope of that agreement.

---

[2] The circuit court noted that it "would deny [Appellants'] Motion based on any of the arguments" they raised, but that "foremost in the Court's consideration … is the lack of consideration."

6

The Supreme Court of Missouri has held that "an employee handbook which was unilaterally prepared by an employer, and subject to change by the employer at any time, could not establish enforceable contractual rights." *Johnson v. Vatterott Educ. Ctrs., Inc.*, 410 S.W.3d 735, 738 (Mo. App. W.D. 2013) (citing *Johnson v. McDonnell Douglas Corp.,* 745 S.W.2d 661, 662 (Mo. banc 1988)); *accord McIntosh v. Tenet Health Sys. Hosps., Inc./Lutheran Med. Ctr.*, 48 S.W.3d 85, 89 (Mo. App. E.D. 2001). However, parties can create a valid arbitration agreement within an employee handbook by fulfilling the offer, acceptance, and consideration requirements applicable to all contracts, and by unambiguously agreeing that "binding arbitration will constitute the employee's exclusive remedy for employment-related disputes." *Johnson*, 410 S.W.3d at 738-39 (citing *McIntosh*, 48 S.W.3d at 87, 89, and *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832, 835 (8th Cir. 1997)).

### A. Respondent's Specific Challenge to the Delegation Provision

A valid delegation provision within an arbitration agreement "gives an arbitrator authority to decide even the initial question whether the parties' dispute is subject to arbitration." *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 538, 202 L. Ed. 2d 536 (2019). Agreements to delegate issues of arbitrability to an arbitrator create "additional, antecedent agreement[s]" subject to the regular arbitration laws. *Rent-A-Ctr.*, 561 U.S. at 70. These provisions are subject to the "severability principle," meaning that the party opposing arbitration must challenge the delegation clause separately from the arbitration agreement itself. *New Prime*, 139 S. Ct. at 538. Thus, if a party wants to challenge a delegation provision, he or she must do so separately from the rest of the arbitration agreement. *Id.*; *Theroff*, 591 S.W.3d at 439. The challenge must directly and specifically address the delegation provision. *Esser v. Anheuser-Busch, LLC*, 567 S.W.3d 644, 650 (Mo. App. E.D. 2018), *transfer denied* March 5, 2019. The court must consider

the delegation provision "standing alone" from the rest of the arbitration agreement. *Soars v. Easter Seals Midwest*, 563 S.W.3d 111, 117 (Mo. banc 2018).

Despite Appellants' objections, we find that Respondent sufficiently challenged the delegation provision. She dedicated nearly two pages of her sur-reply in opposition to the Motion to Compel, making specific arguments against the validity of the delegation clause, including the argument that "Volt could change the delegation clause at any time it wanted because it reserved the 'right to change, interpret or cancel any of its rules, policies, benefits, procedures or practices….'"[3] Appellants resist this notion, relying on *Soars v. Easter Seals Midwest*, 563 S.W.3d 111 (Mo. banc 2018), to contend that Respondent failed to separately challenge the delegation provision and that she directed her arguments at the arbitration agreement as a whole.

Appellants' arguments, however, are misguided. The Employee Guide itself does not contain the delegation provision Appellants seek to enforce. Rather, the Employee Guide incorporates the "applicable rules" of the American Arbitration Association ("AAA") by reference, and the AAA rules contain the delegation provision that Appellants seek to enforce. In this case, Respondent does not need to craft new arguments to separately challenge the delegation provision—she needs only to tailor those arguments to the delegation provision specifically. *See Esser*, 567 S.W.3d at 650 ("[Employer]'s argument that Respondent's challenge is insufficient because he asserted that both the DRP [Dispute Resolution Program] and the delegation provision were invalid and unenforceable for the same reasons is both meritless and illogical. The delegation provision was contained within the DRP itself, and was allegedly mailed to [Employee] just like the rest of the DRP. Logically, as [Employer] attempted

---

[3] Appellants first raised the delegation issue in their reply brief, which they filed just hours before the hearing on the Motion to Compel. The circuit court granted Respondent leave to file a sur-reply so that she would not be prejudiced as a result of Appellants' last-minute filing of their reply memorandum.

8

to present both the DRP and the delegation provision to [Employee] in the same manner and in the same document, [Employee] would obviously assert the same validity and enforceability challenges to both the DRP and to the delegation provision in regards to whether either fulfills the essential elements of a contract."). Respondent has tailored her argument to specifically address the delegation provision. She has maintained that the reservation of rights language in the Employee Guide applies to the delegation provision and has crafted her argument to the delegation provision specifically, in addition to the arbitration agreement as a whole. Her challenge suffices.

We consider the delegation provision and arbitration agreement separately as required by Missouri law, *Soars*, 563 S.W.3d at 117, but because we find that Appellants made illusory promises as to both the arbitration agreement and delegation provision for the same reasons, we explain our reasoning for both in the section below.

## B. Points I and II

As the party seeking to compel arbitration, Appellants have the burden of showing that a valid agreement exists. *Esser*, 567 S.W.3d at 651. "Generally[,] any silence or ambiguity concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Soars*, 563 S.W.3d at 114 (quoting *State ex rel. Pinkerton v. Fahnestock*, 531 S.W.3d 36, 43 (Mo. banc 2017)). However, when considering whether a court or an arbitrator should decide threshold questions of arbitrability, there is generally a presumption against arbitrability. *Id.* (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944-45, 115 S. Ct. 1920, 131 L.Ed.2d 985 (1995)). Regarding delegation provisions, "[w]hen considering whether parties have intended to delegate threshold questions of arbitrability to an arbitrator, '[c]ourts should not assume that the parties

agreed to arbitrate arbitrability unless there is clea[r] and unmistakabl[e] evidence that they did so.'" *Esser*, 567 S.W.3d at 651 (first alteration added) (quoting *Pinkerton*, 531 S.W.3d at 43).

Appellants correctly point out that incorporating the relevant AAA rules by reference can provide this "clear and unmistakable" evidence of a delegation agreement. *Pinkerton*, 531 S.W.3d at 45. However, any such agreement still requires the presence of consideration. *Esser*, 567 S.W.3d at 649. "Consideration consists either of a promise (to do or refrain from doing something) or the transfer or giving up of something of value to the other party." *Id.* (quoting *Bowers v. Asbury St. Louis Lex, LLC*, 478 S.W.3d 423, 426 (Mo. App. E.D. 2015)). In *Baker v. Bristol Care, Inc.*, the Supreme Court of Missouri expressly recognized that a promise to arbitrate "is illusory when one party retains the unilateral right to amend the agreement and avoid its obligations." 450 S.W.3d 770, 776 (Mo. banc 2014). An illusory promise does not make valid consideration. *Id.* In this case, Appellants explicitly stated that the information in the Employee Guide "reflects current *policies, procedures, practices and benefits*." (Emphasis added). They then reserved the unilateral right to "change, interpret or cancel *any* of its rules, policies, benefits, procedures or practices at [their] discretion, upon reasonable notice where practicable"—including the arbitration agreement and delegation provision. (Emphasis added). This reservation renders Appellants' promises illusory and fails to bind them to either the delegation provision or arbitration agreement located within the Employee Guide. Therefore, the circuit court did not err in denying the Motion to Compel because both the delegation provision and the arbitration agreement lack consideration.

Appellants further argue that the parties' mutual promises to one another create consideration for the delegation provision and arbitration agreement.[4] "Where there is no

---

[4] In Missouri, "continued at-will employment is not valid consideration to create an enforceable contract," such as an arbitration agreement. *Baker*, 450 S.W.3d at 775.

10

consideration other than the parties' mutual promises, the agreement is commonly referred to as a bilateral contract." *Jimenez v. Cintas Corp.*, 475 S.W.3d 679, 685 (Mo. App. E.D. 2015). These promises, in a bilateral contract, require "mutuality of obligation," meaning that "an obligation rests upon each party to do or permit to be done something in consideration of the act or promise of the other; that is, *neither party is bound unless both are bound*." *Id.* at 686 (emphasis added) (quoting *Sumners v. Service Vending Co., Inc.*, 102 S.W.3d 37, 41 (Mo. App. S.D. 2003)).

Appellants' promises to Respondent, however, do not bind them to the delegation provision or arbitration agreement in their Employee Guide; therefore, Appellants cannot enforce either against Respondent. In their own words, Appellants explicitly retain an unfettered right to unilaterally modify any and all parts of their Employee Guide at any time and without notice, including the arbitration agreement and the delegation provision that they seek to enforce. Appellants reiterate that they retain this unilateral right throughout the Employee Guide, including on the very Acknowledgement page that they asked Respondent to sign. At any moment, Appellants could decide that they want to change the rules or even eliminate the delegation provision or the arbitration agreement entirely. *Cf. Soars*, 563 S.W.3d at 117 ("Because neither [party] retains any unilateral right to amend the delegation clause nor avoid its obligations, the delegation clause is bilateral in nature and consideration is present."). However, when one party "retains unilateral authority to amend the agreement retroactively, its promise to arbitrate is illusory and is not consideration." *Baker*, 450 S.W.3d at 776–77; *accord Esser*, 567 S.W.3d at 652. By retaining their unilateral right to modify the delegation provision at any time and without notice, Appellants' purported promise to Respondent is "fatally illusory." *Morrow*

11

*v. Hallmark Cards, Inc.*, 273 S.W.3d 15, 30 (Mo. App. W.D. 2008) (Ahuja, J., concurring). The same rationale applies to the arbitration agreement in the Employee Guide more broadly.

Appellants argue that their use of "[e]xcept as otherwise stated" in the Acknowledgement exempts both the arbitration agreement and delegation provision from the reservation of rights language used throughout the Employee Guide. This argument does not hold water in light of Missouri case law regarding the interpretation of contracts. For example, "we read the terms of the contract together as a whole to determine the intention of the parties, giving each term its plain, ordinary, and usual meaning." *Jimenez*, 475 S.W.3d at 686. "[W]e attribute 'a reasonable meaning to all of the provisions of the agreement'" in doing so. *Id.* (quoting *Kohner Props., Inc. v. SPCP Grp. VI, LLC*, 408 S.W.3d 336, 342-43 (Mo. App. E.D. 2013)).

The "[e]xcept as otherwise stated" clause cannot reasonably be read to exempt only the delegation clause or the arbitration agreement from Appellants' reservation of rights language, as Appellants suggest. At best, this language is ambiguous, and we would construe this against Appellants as the drafters of the Employee Guide. *See State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 811 (Mo. banc 2015) (noting that "it is a well-settled rule that if ambiguous, a contract will be construed against the drafter" (alterations omitted) (citation omitted)). However, we do not read this clause as ambiguous because it clearly refers to claims exempted from arbitration by applicable law. The Employee Guide's Workplace Complaint Procedure reads: "Using Volt's Workplace Complaint Procedure does not prohibit you from filing a complaint with your local, state or federal agency responsible for investigating discrimination, harassment or retaliation complaints." Even the Arbitration section of the Employee Guide informs employees that it "does not prevent you from filing a charge or claim with any governmental administrative agency as permitted by applicable law." In Missouri, when "[t]he plain and clear terms … leave

12

no doubt that [an employer] possessed the unilateral right to modify any and all of the terms of the [Employee] Handbook without notice … the purported promise made by [the employer] to follow the dispute resolution procedures in the Handbook is illusory." *Whitworth v. McBride & Son Homes, Inc.*, 344 S.W.3d 730, 742 (Mo. App. W.D. 2011). In this case, Appellants' reservation of rights language plainly applies to both the arbitration agreement and the delegation provision. This unilateral reservation of rights, in conjunction with the presumption against delegation, means that Appellants only made an illusory promise to delegate issues of arbitrability via the delegation provision. *Esser*, 567 S.W.3d at 652 ("While mutual promises to arbitrate are sufficient consideration, Missouri courts have found that reservations to unilaterally amend or modify arbitration agreements cause those promises to arbitrate to be illusory, and as such, cause those purported arbitration agreements to lack sufficient consideration to form a valid contract under Missouri law." (citing *Bowers*, 478 S.W.3d at 427)). The same rationale applies to the arbitration agreement more broadly, notwithstanding the general presumption favoring arbitration.

Appellants also mistakenly rely on *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832 (8th Cir. 1997), and *McIntosh v. Tenet Health Systems Hospitals, Inc./Lutheran Medical Center*, 48 S.W.3d 85 (Mo. App. E.D. 2001), to support their position, ignoring more relevant (and binding) Missouri law. *See, e.g.*, *Johnson*, 410 S.W.3d at 735 (holding that an arbitration agreement was subject to the general provisions of an employee handbook, which indicated that the handbook's contents were merely guidelines and were unilaterally modifiable by the employer at any time). *McIntosh* does not deal with illusory consideration, and *Patterson* is entirely distinguishable. In *Patterson*, the Eighth Circuit found that the arbitration agreement was distinct enough from the rest of the employee handbook that it could be considered separately for two primary reasons.

The first reason is that the following heading distinguished it from the rest of the handbook: "IMPORTANT! *Acknowledgment Form.*" 13 F.3d at 835. Second, according to the Eighth Circuit, there was "a marked transition in language and tone from the paragraph preceding the arbitration clause to the arbitration clause itself," and therefore the reservation of rights language did not apply to the arbitration clause. *Id.* In this case, unlike *Patterson*, nothing distinguishes the arbitration section from the rest of the Employee Guide. The Arbitration section falls on the same page as the "Travel expense policy" section and is printed in the same font and size. The Arbitration section also uses identical language to the rest of the Employee Guide, including references to rights and laws, disclaimers of liability and responsibility, and an explanation of Appellants' preference for arbitration akin to how they explain other policies. Appellants even recognize that the delegation and arbitration agreements form part of the Employee Guide, with the Acknowledgement reading: "Except as otherwise stated, I agree to arbitrate any and all disputes related to my employment or assignment(s) with Volt, *as discussed in this Guide*." (Emphasis added). Nothing distinguishes either the arbitration agreement or the delegation provision, standing alone, from the reservation of rights language that applies to the Employee Guide as a whole. Therefore, Appellants' promises to arbitrate and to delegate are merely illusory, and each agreement lacks consideration.

In sum, Appellants retained the unilateral right to modify any and all parts of the Employee Guide without notice and at any time, which includes both the agreement to delegate and the agreement to arbitrate. This makes Appellants' promises illusory, such that they are not bound by them. Such illusory promises provide no valid consideration. *See Baker*, 450 S.W.3d at 776.

Points I and II are denied.

14

## V.  Conclusion

For the reasons stated above, we affirm the judgment of the circuit court.


_____
Kelly C. Broniec, Judge


Colleen Dolan, P.J. and
Robert M. Clayton III, J. concur.